CORNELIA GILMAN, Respondent, v. PREBLE TUCKER, Appellant.

The legislature has no power to deny, for any cause, to a party who has been illegally deprived of his property, access to the constitutional courts of the state for relief; the denial of a remedy for the wrong inflicted deprives him of his property as effectually as if it had been taken from him by direct legislative enactment.

A statute which assumes to destroy or nullify a party's muniments of title is as effective in depriving him of his property as one which bestows it directly upon another.

So, also, authority which permits a party to be deprived of his property by indirection is as much within the meaning and spirit of the constitutional prohibition as when it attempts to do the same thing directly.

A statute which provides for an involuntary transfer of property from one person to another without due process of law, whether with or without compensation, is unconstitutional, whatever may be the pretext upon which it is founded.

After judgment has been rendered in an action, the fruits thereof are rights of property, and are beyond the reach of legislative power to affect.

The provision of the Code of Civil Procedure (§ 1440) relating to the title to real property sold on execution, as amended in 1881 (Chap. 681, Laws of 1881), which provides that if the title of the sheriff's "grantee or his assignees is adjudged for any reason or cause whatever to be null and void in any action for that purpose brought by the judgment debtor or his assignees, such judgment shall have no force or effect unless within twenty days after the entry" or in case of pending appeal, within twenty days after final judgment "the plaintiff shall pay to such grantee or his assignees the * * * money * * * paid on the sale, with interest from the time of the sale, * * * including the costs and expenses of defendant in defending the action, * * * and in the event of the plaintiff's failure to pay such purchase-money and expenses within the time aforesaid, said title shall be valid in said grantee," is unconstitutional and void; it violates the constitutional prohibition against depriving the owner of his property without due process of law, and it assumes to nullify a final and unimpeachable judgment. It is also objectionable by reason of the ambiguity of the provision relating to the time limited for making the payments required by it.

(Argued June 4, 1891; decided October 6, 1891.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made the first Monday of

December, 1890, which affirmed an order of Special Term deny-ing a motion by defendant for an order declaring the judg-ment obtained in the above-entitled action of no force and effect.

The facts, so far as material, are stated in the opinion.

*Esek Cowen* for appellant. In all cases where a judgment is wholly or partially paid, or where, for any reason, it is void, and it would be unjust and inequitable to collect it, the proper remedy is, by motion in the court in which it was rendered, either to vacate or cancel the judgment, or for a perpetual stay of execution. (*Vilas* v. *P. & M. R. R. Co.*, 123 N. Y. 451; *Roach* v. *Duckworth*, 95 id. 391.) Section 1440 of the Code of Civil Procedure protects any person who has received the sheriff's deed, whether he was the original purchaser at the sale or a creditor who has redeemed from such purchaser. (Code Civ. Pro. §§ 1479, 1480; *Roome* v. *Phillips*, 24 N. Y. 463; *Chrystie* v. *Phyfe*, 19 id. 344; *Van Vechten* v. *Pear-son*, 55 Paige, 512; *Holmes* v. *Carley*, 31 N. Y. 289; *Chase* v. *N. Y. C. R. R. Co.*, 26 id. 528; *People* v. *Draper*, 15 id. 532.) Section 1440 of the Code of Civil Procedure is not a violation of any constitutional provision of this state or of the United States. (*McIntyre* v. *Sanford*, 89 N. Y. 634; *Bell* v. *Vanderbilt*, 67 How. Pr. 340; *Ensign* v. *Barse*, 107 N. Y. 329; *Town of Duanesburgh* v. *Jenkins*, 57 id. 177; *Horton* v. *Town of Thompson*, 71 id. 522; *People* v. *McDonald*, 69 id. 362; 2 R. S. 375, § 69.)

*Everett P. Wheeler* and *Tucker, Hardy & Wainwright* for appellant. Section 1440 of the Code is constitutional. (*Bonns* v. *May*, 120 N. Y. 357; *Brevoort* v. *Brooklyn*, 89 id. 128; *Terry* v. *Wheeler*, 123 id. 76; *Clementi* v. *Jackson*, 92 id. 591; *Ensign* v. *Barse*, 107 id. 329; *Williams* v. *City of Albany*, 122 U. S. 154; *People* v. *Turner*, 117 N. Y. 227; 64 id. 268.) Previous to 1827 it was the law of this state that a mortgage or other security taken upon a loan of money at usurious rate was void. Nevertheless it was also the law that

a party seeking equitable relief in reference to such mortgage or security was obliged, as a condition of obtaining this relief, to tender the amount which he had actually received, with legal interest. This would seem to be in complete analogy to the present case. (*Livingston* v. *Harris*, 3 Paige, 527, 533; *Tupper* v. *Powell*, 1 Johns. Ch. 439; *Fanning* v. *Dunham*, 5 id. 122.) A statute may be constitutional in part, even though there are constitutional objections to another part. The point always is whether the two portions are separable. (Sedgwick on Stat. Const. 413, 414; *People* v. *Green*, 58 N. Y. 295.) In the case at bar it may be contended that the legislature has no power to require as a condition of granting the relief, the payment of the costs and expenses of the litigation. The case is much stronger in favor of the require- ment that the plaintiff shall repay to the defendant the amount due at the sale, for the effect of this payment was undoubtedly to extinguish a debt due from the defendant in the first suit, the plaintiff in the second. (*McIntyre* v. *Sanford*, 89 N. Y. 634.) In considering this statute reference should be had to the legislation which it codified. It is not to be inferred from a mere change in the phraseology that it was the intention to change the law. (*Hall* v. *W. T. Co.*, 34 N. Y. 284, 287; 2 R. S. 371, 373, 380, §§ 45–49, 50, 61.) By the payment to Prentice, Preble Tucker acquired all the rights of Prentice, including the right to be reimbursed " the sum of money which was paid upon the sale." (*Booth* v. *F. Bank*, 50 N. Y. 400; *Peo- ple* v. *Cromwell*, 102 id. 477; *F. & C. Bank* v. *Sherman*, 33 id. 69; *Gaffney* v. *Chapman*, 4 Robt. 275; *Eaves* v. *Hender- son*, 17 Wend. 190; *Rose* v. *Rose*, 7 Barb. 174; *Witherby* v. *Man*, 11 Johns. 518; *Benton* v. *Hatch*, 43 Hun, 142.) The reversal of the judgment in favor of Mary A. P. Tucker against Mrs. Gilman does not affect the case. While that judg- ment was in force a purchaser of it in good faith and for value acquired Prentice's title under his judgment. (4 Kent's Comm. 436; *Wood* v. *Jackson*, 8 Wend. 9; *Davis* v. *Gaines*, 104 U. S. 386; *Gay* v. *Brignardello*, 1 Wall. 627; *Hennig* v. *Punett*, 4 Daly, 543.)

*Charles E. Hughes* and *George H. Fletcher* for respondent. The case at bar does not fall within the provisions of section 1440 of the Code of Civil Procedure. (Code Civ. Pro. §§ 1450, 1471, 1480, 1638, 1650; *Schermerhorn* v. *Merrill*, 1 Barb. 512; *Vaughn* v. *Ely*, 4 id. 159; *Smith* v. *Colwell*, 17 id. 157; *Southworth* v. *Scofield*, 51 N. Y. 513; *Ford* v. *Belmont*, 69 id. 567; *Burnham* v. *Onderdonck*, 41 id. 431; *Barnard* v. *Sims*, 42 Barb. 307.) It has not been shown that the plaintiff is in default. (Cooley on Tax. [2d ed.] 463, 464; *McIntyre* v. *Sanford*, 2 Civ. Pro. Rep. 306.) The amendment of 1881 to section 1440 of the Code of Civil Procedure authorizes an unlawful deprivation of property and is unconstitutional. (*Lawton* v. *Steele*, 119 N. Y. 226; *Wilkinson* v. *Leland*, 2 Peters, 267; *Taylor* v. *Porter*, 4 Hill, 140; Cooley on Taxn. [2d ed.] 465, 553; *Bowe* v. *U. S. R. Co.*, 36 Hun, 407; *Weston* v. *Watts*, 45 id. 219; Cooley on Const. Law, 327; *O. & M. R. Co.* v. *Lackey*, 78 Ill. 55; *Campbell* v. *Evans*, 45 N. Y. 356; *Lowry* v. *Rainwater*, 70 Mo. 152; *People* v. *Otis*, 90 N. Y. 48; *Hart* v. *Henderson*, 17 Mich. 218; *Cromwell* v. *MacLean*, 123 N. Y. 474; *Stuart* v. *Palmer*, 74 id. 183; *Marshall* v. *McDaniel*, 12 Bush. 378; *McGhee* v. *Ellis*, 4 Litt. 245; *Muir* v. *Craig*, 3 Blackf. 292; *Hawkins* v. *Miller*, 26 Ind. 173; *Price* v. *Boyd*, 1 Dana, 436; *Howard* v. *North*, 5 Texas, 290; *McLaughlin* v. *Daniel*, 8 Dana, 183; *Jones* v. *French*, 92 Ind. 138; *Short* v. *Sears*, 93 id. 505; *Bentley* v. *Long*, 1 Strob. Eq. 52; *Pope* v. *Macon*, 23 Ark. 644; *Conway* v. *Cable*, 37 Ill. 82; *Douglass* v. *Flynn*, 43 Ark. 398; *Ross* v. *Irving*, 14 Ill. 174; *Madland* v. *Benland*, 24 Minn. 372.)

RUGER, Ch. J. This appeal involves the construction and constitutionality of section 1440 of the Code of Civil Procedure, as amended by chapter 681 of the Laws of 1881, relating to the sale, redemption and conveyance of real property sold on execution.

The questions arise upon the affirmance, by the General Term, of an order of the Special Term denying the defend-

ant's motion to set aside and vacate a judgment entered herein for the plaintiff. No claim was made, but that the judgment was regular and authorized by the evidence in the case, or that it had been paid or satisfied or that there was any statute or rule of law which required the court to set aside such judgment. The purposes of the act referred to, if valid, do not require an order of the court to render them effective. The contention is, that the defendant is entitled to the relief asked for, because the plaintiff did not, within twenty days after the recovery of the judgment, make certain payments to the defendant required by the statute, in default of which the section referred to declares the judgment to be of " no force or effect."

Even if it be conceded that the provisions of the Code are valid, it does not follow that the defendant is entitled, as of course, to the relief demanded. It is not required by the language of the statute, and the court might well have said, in the exercise of its discretion, that the defendant should be left to the remedies which the statute gave him, and that it would not determine the controversy in a summary way upon motion. But we are disinclined to dispose of the appeal on this point, as important questions are raised by the case which, in the interest of justice, require an early disposition.

The evidence in the case shows that previous to the commencement of this action, the defendant had, as a subsequent judgment creditor of the plaintiff, acquired the right to a deed from the sheriff, by the redemption from the purchaser upon an execution sale, of a house and lot in New York belonging to the plaintiff; and she, believing the sale to have been unauthorized and illegal, brought this action to compel a determination of the defendant's claim under such redemption.

In answer to the action the defendant set up title in himself through the proceedings to redeem from the former judgment creditor who had bid it in on an execution sale, upon a judgment in his favor against the plaintiff. The question litigated upon the trial was as to the validity of the execution upon

which such sale was had. The trial court found that it was "a void process, and that, therefore, the sale under that void process was also void and of no effect, and, therefore, the defendant Tucker could and did take no valid title by reason of his redemption from a sale which was void." (*Place* v. *Riley*, 98 N. Y. 1.) Judgment was, therefore, rendered in favor of this plaintiff, with costs, and that judgment was affirmed, not only by the General Term, but also by this court, with costs. It is now claimed that this judgment is ineffective, because the plaintiff did not, within twenty days after its recovery, in compliance with section 1440, pay to the defendant the moneys required to be paid by that section. The section, as amended, reads as follows : " The right and title of the judgment debtor, or of a person holding under him, or deriving title through him, to real property, sold by virtue of an execution, is not divested by the sale, until the expiration of the period within which it can be redeemed, as prescribed in this article and the execution of the sheriff's deed. But, if the property is not redeemed and a deed is executed in pursuance of the sale, the grantee in the deed is deemed to have been vested with the legal estate from the time of the sale." Then follows the amendment : " And if the title of such grantee, or his assignees, is adjudged, *for any reason or cause whatsoever*, to be null and void in any action for that purpose brought by the judgment debtor, or his assignees, such judgment shall have *no force or effect*, unless within twenty days after the entry of such judgment, the plaintiff shall pay to such grantee, or his assignees, the sum of money which was paid upon the sale, with interest from the time of the sale as prescribed in this article, including the costs and expenses of defendant in defending the action in which such judgment was recovered, to be adjusted by a judge of the court in which said action was brought; and in the event of plaintiff's failure to pay such purchase-money and expenses within the time aforesaid, *said title shall be valid in said grantee.*"

It was also provided that if, in any pending action to recover such property, an appeal had been taken, the plaintiff should

have twenty days from final judgment in his favor to make the payments required.

In considering the meaning and effect of the amendatory. act, it is desirable to have in mind the previous condition of the law on the subject. The Code of Civil Procedure, which was a substantial re-enactment of the provisions of the Revised Statutes, in respect to this subject, provided that, on a sale of lands on execution, the debtor's title should not be divested until fifteen months after the sale. This period was allowed him and his judgment and mortgage creditors to enable them to redeem from the sale. The first year was allowed to the debtor and the three succeeding months to the creditors entitled to the benefit of the redeeming statute. On the expiration of the fifteen months, in case there was no redemption by the owner, the sheriff was bound to execute a deed of the premises to the purchaser on the sale, or to his assignees, or to the person entitled thereto under the provisions of the statutes relating to redemption. (§ 1471.) Upon a redemption by the judgment debtor, or his heirs, executors, or assignees, the sale and certificates thereof become null and void and no conveyance, therefore, was required to be executed, as the judgment became satisfied to the extent of the sum collected and applied on the execution, and the title of the property sold remained in the judgment debtor. (§ 1448.)

In case of a redemption by a judgment or mortgage creditor he was required, not only to pay the amount specified by the statute to the person from whom he redeemed, but also to execute a satisfaction of his judgment or mortgage, stating that the redemption satisfies the judgment or mortgage in full, or to a specified amount. (§ 1463.) The purchaser of real property, sold by virtue of an execution, who has been evicted from the possession thereof, or against whom judgment is rendered in an action to recover the same, in consequence, first, of any irregularity in the proceedings concerning the sale; or, second, of the judgment upon which the execution was issued, being vacated or reversed, or set aside for irregularity, or error in fact, may recover the purchase-money

paid by him, with interest, from the person for whose benefit the property was sold. (§ 1479.)

In case of a sale vacated upon an "irregularity in the proceedings concerning the sale," the judgment under which the sale was made is revived and becomes valid to enable the judgment creditor to collect the sum paid on the sale with interest. (§ 1480.) It is also provided that a judgment creditor who completes proceedings for redemption acquires all the right, title and interest in the property which the purchaser acquired by the sale. (§ 1471.)

The protection which this scheme affords persons who have purchased land on an illegal sale, is apparently sufficient for all of the requirements of justice or equity, independent of the amended section. Thus, when such sale is declared void, the security of the judgment creditor is restored for the purpose of enabling him to reimburse himself for the moneys paid on the sale, and a purchaser on a sale whose title is defeated for any of the causes specified is authorized to recover the purchase-money paid by him from the judgment creditor, or those who represent him.

These provisions gave an adequate and sufficient remedy to all of the parties interested where there had been an illegal sale on execution. The judgment creditor lost no rights by making such sale, and the innocent purchaser and his assignees were protected as well where the judgment was founded upon irregularities in the proceedings concerning the sale, as when it had been reversed or vacated.

There could, of course, be no just foundation for a claim by the judgment creditor to be reimbursed by anyone when his judgment had for any reason been reversed or set aside, because in that event his claim would itself be extinguished and he would have suffered no loss.

A point is made by the respondent upon the language of the act, that the defendant, being a redeeming creditor, does not come within its terms. By the express language of the act, its provisions would seem to be operative only where the land had not been redeemed. There can be no

question, we think, but that, under the language of the statute, the land had, within its meaning, been redeemed, and the defendant was, therefore, precluded by its terms from availing himself of its benefits. If this should be held to be the true construction of the act, its operation would then be confined to those who purchased on the sale, and their assignees alone, and would thus exclude the defendant from the benefit of the act.

It is contended, however, by the appellant that a redeeming creditor comes within the spirit of the act, and should, therefore, be held to be within its meaning.

We should be reluctant, under any circumstances, to extend by construction the scope and application of a statute which seems to be so uncalled for and inequitable as this, and particularly so when the redeeming creditor has an adequate remedy for any loss which he may have incurred; but where a party is excluded from the benefit of an act by its express language the court is not at liberty to extend its operation by construction for the purpose of bringing him within its spirit. But, however this may be, we think that it is due to the gravity and importance of the questions raised that we should base our decision upon those more important points presented by the objections to the validity of the amendment.

It is to be observed, in the first place, that the act is predicated upon the existence of a final judgment determining not only that the property to be affected has been illegally sold, but that it still belongs to the plaintiff therein and that the defendant has no legal claim thereto, but also awarding to the plaintiff the costs of the action and impliedly holding that defendant is not entitled to such costs. The act contains, therefore, the most ample concession that the party against whose rights it is aimed is, in law, the absolute owner of the property to be affected by the amendment and is a judgment creditor of the defendant to the extent of the costs included in the judgment. It then proceeds to declare how he may be divested of this title and property and provides that, after recovering such judgment, unless he pays within a

limited time to the defendant an arbitrary sum, his property shall, by force of the act alone, be transferred to his adversary.

The sole aim of the statute thus seems to be to effect a change of title, and to wrest from one person the property which has been finally adjudged to be his, and vest it in another by mere force of the legislative will. No obligation to make the payments referred to existed at law and none was created by the act, but it simply declared that unless they are made, the defaulting party shall forfeit his property and it shall be transferred to another who has neither legal nor equitable claim to it. In effect it reverses the judgment and gives to one that which the court has deliberately adjudged to another.

The plaintiff contends that the statute is unconstitutional, because it deprives the owner of his property without due process of law, and we are of the opinion that the claim is well founded.

It cannot be the subject of doubt that an act of the legislature which provides for an involuntary transfer of property from one person to another, without due process of law, whether with or without compensation, violates the principles of the fundamental law whatever may be the pretext upon which it is founded.

It was said by Justice JEWETT in *Embury* v. *Conner* (3 N. Y. 511), after a review of the authorities, that " I think these decisions should be regarded as having settled the point that a statute is unconstitutional and void which authorizes the transfer of one man's property to another without the consent of the owner, although compensation be made."

And it is laid down in Cooley's Constitutional Limitations (at page 444) as an elementary principle that a party cannot " by his misconduct so forfeit a right that it may be taken from him without judicial proceedings, in which a forfeiture shall be declared in due form. Forfeiture of rights and properties cannot be adjudged by legislative acts, and confiscation, without a judicial hearing after due notice, would be void as not being due process of law."

The act comes clearly within the spirit of our decision in *Cromwell* v. *MacLean* (123 N. Y. 474) where Judge PECKHAM, in relation to a tax sale, says: " Holding, as we must, that no title or interest in fact passed to the purchaser at these tax sales and that the original owner, therefore, still retained his title, the effect of the act in question, if valid, is by legislative fiat to transfer the title of the property of Edward C. Wilson, as trustee, to the lessees under these invalid leases.   *   *   * Has the legislature of this state the right to take the property of A. and transfer it to B. under the guise of confirming sales made of such land *in invitum ;* but by which no title, in fact or in law, passed from the owner to the purchaser ?    The statement of the question should be its best answer.   The property thus taken is not taken by due process of law.  .*   *   * What difference does it make to say that the legislature is acting only in a way of validating proceedings to collect a tax which, in justice the owner of the land ought to pay.   The answer is, that the proceedings have been so fatally defective that no title has passed and the owner has his title to his property the same as if no proceedings had been taken.   Where is the authority in such case for the legislature to itself transfer the title of his property to some one else."

It is obvious that if the legislature could not directly confirm such a sale, the court ought not to strain to discover such an illegal intention in the words of an act whose motives and purposes are ambiguous and indefinite.

Tested by these rules we are unable to see how this act can be supported and at the same time effect be given to the constitutional guaranty.   It was said by Judge EARL in *Stuart* v. *Palmer* (74 N. Y. 183), that "the constitutional validity of a law is to be tested, not by what has been done under it, but by what may by its authority be done."

A consideration of the results which may be reached through the provisions of this act, when construed according to the plain meaning of its language, demonstrates the impossibility .of reconciling its provisions with the requirements of the fundamental law.   The obvious intention of the act is to take away

from the owner all remedy for the recovery of his property, except upon the payment by him to his adversary of a sum of money which must frequently be greater than the value of the property itself. If he remains in possession of the property, he is. deprived of any remedy to protect his possession, and if his adversary has succeeded in obtaining possession, he is deprived of any remedy to recover it, except upon the condition that he pays as much, or more, than it is probably worth. An owner may, therefore, under this law, be stripped of his property under a void proceeding; be turned out of possession and denied any affirmative relief in the courts, unless upon the condition that he pays for the property its value, as determined by a judicial sale, and in addition thereto, a sum for costs and expenses, the amount of which he has no means of ascertaining, and which may also exceed the value of the property in litigation. A more effectual scheme to deprive an owner of his property could hardly be conceived. Whether he abandons it to the wrong-doer or elects to seek his remedy in the courts, the property, as a subject of value, has passed from him irrecoverably.

It is not claimed by the appellant that the change of title intended to be effected by this statute, is to be produced by any process of law, or as the result of any judicial proceeding whatever; and the statute, in plain language, declares that it shall take place as a consequence of the owner's successful attempt to establish his right. through any action at law, upon a failure to make the payments required. The statute is intended to execute itself and pass the title upon the expiration of the time limited by the statute.

One of the arguments by which the statute is attempted to be sustained, is the claim that the legislature has, in effect, required the owner to repay certain sums of money which had theretofore been appropriated to her use, and, inasmuch as she has had the benefit of the amount bid on the sale, it is argued that it is in accordance with equitable rules that she should be required to repay such sums before recovering back her property.

We do not think it is competent for the legislature to deny, for any cause, to a party who has been illegally deprived of his property, access to the constitutional courts of the state for relief.

If, as we have seen, he is denied all remedy for the wrong inflicted upon him, the deprivation of his property becomes just as effectual as though it had been taken from him by direct legislative enactment. But, however this may be, the act does not seem to furnish any foundation for the argument. The plaintiff has never in fact been relieved from her liability to pay the original judgment and has not derived any benefit from the attempted sale. That liability was revived against her in favor of the judgment creditor when she recovered judgment for the land, and no provision is made by the act for the satisfaction of that lien, although the payment required by the statute be actually made by her. The lien is given to one party and the payment is required to be made to another, and, in the absence of any provision in the statute making such payment a satisfaction, it is difficult to see why the lien does not remain and the judgment stand unsatisfied.

The payment required was also unnecessary for the protection of the redeeming creditor, as he had his right of action to recover back the money paid by him from the person to whom it was paid. The section, as amended, thus secures to the judgment creditor not only a lien on the land for the original debt, but leaves him in possession of an equivalent sum received from the redeeming creditor, and the redeeming creditor is entitled to receive, not only the money required to be paid under this statute by the owner, but also acquires a cause of action against the judgment creditor to recover back the money expended by him on redemption.

Both of these parties, therefore, have, by this act, double security for the same debt, and no provision is made by the statute that the payment required to be made by the owner shall satisfy any of these liabilities. It would, therefore, seem that, in fact, no benefit accrued to the plaintiff from the moneys paid on the sale, and no pretense was left for the requirement made by the statute.

But a further answer to the claim is found in the fact that the statute proceeds upon no such theory, and purports to make no such application. No reference is made in it to the liabilities of the judgment debtor, or provision made for their satisfaction, and the sum required to be paid by her has no reference to the existence of any lien or debt, or its amount. Indeed, it requires the payment as well when it has been judicially pronounced that there is no debt, as when one may, in fact, exist. The act makes no distinction between cases where the judgment itself upon which the sale was made has been reversed and set aside, and those in which the process alone has been adjudged to be void. It wholly ignores any such distinction and requires the payment to be made as well where no claim ever existed as where a legal claim has been illegally attempted to be enforced. It furnishes no argument in favor of the legality of this act, to say that some of the consequences following its enactment could, under special conditions, have been constitutionally produced, if provided for in some other way. The broad question here is, whether this enactment, construed according to its plain meaning and intent, enables one person to acquire the property of another against his will, except by due process of law. If it does, the courts must condemn it as violative of the fundamental law. The vicious purpose of the act is so thoroughly interwoven with the whole scheme of the enactment as to render it impossible to eradicate its objectionable features without reconstructing the entire section. It is not, therefore, a case where any part of the act can be supported.

We also think the act violates the constitutional guaranty, because it assumes to nullify a final and unimpeachable judgment, not only establishing the plaintiff's right to the premises in dispute, but also awarding him a sum of money as costs. After rendition this judgment became an evidence of title and could not be taken from the plaintiff without destroying one of the instrumentalities by which her title was manifested. A statute which assumes to destroy or nullify a party's muniments of title is just as effective in depriving him of his property as

one which bestows it directly upon another. (*Matter of Jacobs*, 98 N. Y. 98, and authorities there cited.) In the one case it despoils the owner directly, and in the other renders him defenseless against any assault upon his property.

Authority, which permits a party to be deprived of his property by indirection is as much within the meaning and spirit of the constitutional provision as when it attempts to do the same thing directly. Even assuming that it might be lawful for the legislature to impose a condition upon the right of a party to maintain a particular action to recover real property, no such case is here provided for. This statute makes any action at law to establish his right, subject to its provisions, and thus deprives him of all remedy for the wrong done him. It not only does this, but it attempts to reverse a judgment and give to the defeated party the fruits of a recovery awarded to another. We must bear in mind that a judgment has here been rendered, and the rights flowing from it have passed beyond the legislative power, either directly or indirectly, to reach or destroy. After adjudication the fruits of the judgment become rights of property. These rights became vested by the action of the court and were thereby placed beyond the reach of legislative power to affect.

We have been referred to no authority which justifies legislation taking such rights away arbitrarily, and we know of no theory upon which it can be sustained. Instances where land, subject to a lien for taxes, has been sold therefor, and the owner has been required to pay the taxes, as a condition of maintaining an action to recover the land, or the borrower of money, at usurious rates, is required to repay the sum equitably due before maintaining a suit in equity to enforce a forfeiture of the securities held by the creditor, are obviously not analogous to the case under consideration.

We are, therefore, of the opinion that the repugnancy between the law and the constitutional rights of the citizen is so irreconcilable that the law must fail.

Another serious objection to the law seems to exist in the ambiguity of the provisions relating to the time limited for

making the payments required by it. The language of the statute requires the payment to be made within twenty days after judgment, and the subsequent portions of the section, providing that in case of pending appeals the payment might be made within twenty days after final judgment, would seem to imply that in other cases the time must be limited by the original judgment. If this be so, it might be that a defendant, by taking an appeal and staying proceedings, could defeat any effort of the owner to make the payments, and thus compel him to lose his land although he might be willing to comply with the statute. This seems to show the recklessness with which the owner's interests were regarded and the injustice which may be perpetrated under its provisions.

It is not without a feeling of satisfaction that we have found this amendatory statute unconstitutional, for in every view in which it may be considered it impresses us with the conviction that it is grossly inequitable and unjust. We can discover no reason in the situation of the purchaser at an illegal execution sale under the existing law which justifies the adoption of the careless, ill considered and inequitable provisions which distinguish this legislation.

The amended section is subject to many other criticisms which we have not felt called upon to make, as those already referred to fully justify the conclusion we have reached in the case.

The order should, therefore, be affirmed, with costs.

All concur, EARL, J., in result.

´Order affirmed.