(34 Misc. Rep. 750.)

In re FULLER'S ESTATE.

(Surrogate's Court, Westchester County.   May, 1901.)

1. CONSTITUTIONAL LAW—TRANSFER TAX—APPRAISEMENT.
    Laws 1901, c. 173, providing that the county treasurer of Westchester county shall until January 1, 1902, act as a transfer tax appraiser, and be allowed a percentage of the tax so levied as compensation, is unconstitutional, as not "due process of law," as the county treasurer has a personal interest in the tax assessed, and therefore cannot be deemed an impartial judicial officer.

2. SAME—RIGHT OF APPEAL.
    The fact that on an appraisal by a county treasurer, under Laws 1901, c. 173, of an estate for a transfer tax, a right of appeal is given, does not cure the defect caused by the first appraisal made by a treasurer whose compensation under the will is based on a percentage of the tax as assessed by him.

In the matter of the appraisal for taxation of the estate of Sarah Rockwell Fuller.   Application for the appointment of an appraiser granted.

C. H. & J. A. Young, for petitioners.

Frank M. Buck, for county treasurer and state comptroller.

SILKMAN, S.   Application is made for the appointment of an appraiser under the law relating to the taxable transfers of property.   Gen. Laws, c. 24.   The legislature of 1901, by chapter 173 of its Laws, passed an amendment to this law varying its provisions in many respects, and particularly as to the manner of appraisement. The question is whether this amendment violates that law of the land, which legislatures, even, cannot limit or transcend, namely, "that no person shall be deprived of life, liberty or property without due process of law."   The act of 1901 provides (section 5) for the appointment by the state comptroller of salaried appraisers in the counties of New York, Kings, Albany, Dutchess, Erie, Monroe, Onondaga, Orange, Queens, Rensselaer, Richmond, Suffolk, and Westchester.   It provides that in the other counties of the state the surrogate shall direct the county treasurer to make the appraisement. It also provides (section 18) that "this act shall take effect April 1, 1901, except that salaried appraisers for the counties of Albany, Queens, Suffolk, Westchester, Dutchess, Monroe, Onondaga, Orange and Rensselaer shall not be appointed before January 1, 1902, and, until such time, such counties shall be deemed counties in which the office of appraiser is not salaried under the provisions of this act." Thus in the county of Westchester the surrogate, under the provisions of the amended law, until January 1, 1902, is required to designate the county treasurer as the appraiser.   The act provides for the county treasurer's compensation in the following language (section 12):

"The treasurer of each county in which the office of appraiser is not salaried shall be allowed to retain on all taxes paid and accounted for by him each year under this article, five per centum on the first fifty thousand dollars, three per centum on the next fifty thousand dollars, and one per centum on all additional sums.   Such fees shall be in addition to the salaries and fees now allowed by law to such officers."

It thus appears that the county treasurer's compensation depends upon the amount of the tax; the amount of the tax depends upon the appraised value of the property transferred; consequently the county treasurer has a substantial personal interest in the valuation of the property.

The language of the fourteenth amendment to the federal constitution has been adopted in substantially the same words in the constitutions of each of the several states. It is therefore by the approval of the several states, and by the people of each of the states, that this constitutional safeguard quoted has come into existence. No judicial writer has ever attempted to limit the words "due process of law" as used in the constitution, or to define its meaning, except as to the specific matter in respect of which he was called upon to consider it. Webster, in the Dartmouth College Case, said:

"By the law of the land is most clearly intended the general law,—a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not, therefore, to be considered the law of the land."

Judge Story's definition is that "due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one being dealt with belongs." Mr. Justice Miller, of the United States supreme court, in the case of Davidson v. Board, 17 Alb. Law J. 223, said that it would be wiser to leave the meaning of due process of law to be evolved "by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded."

There can be no doubt that the compulsory contributions by citizens towards the expenses of government through taxation are protected by the constitutional provision requiring due process of law before one's property is taken. Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289; Barhyte v. Shepherd, 35 N. Y. 238; Clark v. Norton, 49 N. Y. 243. Most of the authorities in respect of the imposition of taxes and assessments affect only the question of notice, and an opportunity to be heard before such imposition. Nevertheless it is thoroughly well established that the opportunity to be heard contemplated must be before a fair, impartial, and unprejudiced judge, officer, or tribunal. Judge Earl said, in the case of Stuart v. Palmer, supra: "It may, however, be stated generally that due process of law requires an orderly proceeding adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights." In the case of Wynehamer v. People, 13 N. Y. 378, Judge Comstock quotes Justice Chase, of the United States supreme court as follows: "There are certain vital principles in our free republican governments which will determine and overrule an apparent and flagrant abuse of legislative power; as to authorize manifest injustice by a positive

law, or to take away that security for personal liberty or private property, for the protection whereof government was established." "A few instances," he adds, "will suffice to explain what I mean. A law that punishes a citizen for an innocent action, or, in other words, for an act which, when done, was in violation of no existing law; a law which destroys or impairs the lawful private contracts of citizens; a law that makes a man judge in his own case; a law that takes property from A. and gives it to B. It is against all reason and justice for a people to intrust a legislature with such powers, and therefore it cannot be presumed that they have done it." In the case of People v. Marx, 99 N. Y. 377, 2 N. E. 29, Judge Rapallo said: "Equal rights to all are what are intended to be secured by the establishment of constitutional limits to legislative power, and impartial tribunals to enforce them." Under the constitution, property cannot be taken except in a proceeding judicial in its nature. In Gilman v. Tucker, 128 N. Y. 190, 28 N. E. 1040, 13 L. R. A. 304, Chief Judge Ruger said: "It is laid down in Cooley's Constitutional Limitations, as an elementary principle, * * * that forfeiture of rights and properties cannot be adjudged by legislative acts, and confiscation, without a judicial hearing after due notice, will be void, as not being due process of law." The proceeding need not be what is ordinarily termed a judicial one in a court of law; nevertheless, it must be conducted in a judicial manner. In Stuart v. Palmer, above cited, Judge Earl said on this point: "Due process of law is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial, administrative, or executive in its nature. Weimer v. Bunbury, 30 Mich. 201. This great guaranty is always and everywhere present to protect the citizen against arbitrary interference with these sacred rights." The judicial proceeding contemplated is that defined by Mr. Justice Edwards in Westervelt v. Gregg, 12 N. Y. 202, 62 Am. Dec. 160: "Due process of law undoubtedly means in due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights." Judge Cooley, in his work on Constitutional Limitations, says: "Due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as these maxims prescribe for the class of cases to which the one in question belongs."

And this brings us to the consideration of the question of the interest and necessary bias and prejudice of the officer that the legislature has chosen to make the appraisement. No principle of law is older or more fixed in the judicature of the state than that no one ought to be a judge in his own cause, and so manifestly just is this rule that Lord Coke has laid it down that "even an act of parliament made against natural equity, as to make a man a judge in his own case, is void in itself." In the case of People v. Wheeler, 21 N. Y. 82, Judge Wright said: "No judge or officer exercising judicial authority should take part in the decision of any matter or controversy in which he is personally interested, nor in any cause in which he

would be excluded as a juror from consanguinity to either of the parties personally interested in the litigation or matter to be judicially determined." It may be that there are some limitations upon this rule, and the interest which disqualifies is one that is substantial and immediate, not remote, such as the interest which one has as a taxpayer in a community, or as an assessor or highway commissioner of a municipality wherein the interest is in common with others. Under the transfer tax act, as amended by the 1901 statute, the interest of the county treasurer is immediate, substantial, and personal, and it bears no resemblance to the interest of an assessor, in a municipality, whose compensation depends in no way upon the performance of a statutory duty. "In estimating value, taxing officers act judicially." Hagar v. Reclamation Dist., 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569; Stuart v. Palmer, cited above. The transfer tax itself confers upon the appraiser judicial powers. He is directed to give notice by mail to all persons who have, or claim, an interest in the property to be appraised, of the time and place of appraisement. He is authorized to issue subpoenas, to compel the attendance of witnesses, to take evidence of such witnesses under oath, and to make a report of the value in writing to the surrogate, together with the depositions of the witnesses examined. From the above considerations, it follows that the assessment of the transfer tax is the depriving a person of property, and that this can only be done by due process of law. Due process of law implies a judicial proceeding. The appraiser, in appraising the property, acts judicially. Such proceedings must be taken and procedure had as the settled maxims of the law permit and sanction. It is a settled maxim of the law that a judicial officer shall not take part in a decision or controversy in which he is personally interested. The county treasurer is personally interested in the appraisement of the property under the transfer act. Consequently it must be held that the act of 1901 is unconstitutional, in so far as it requires the appraisement to be made by the county treasurer. The vice of unconstitutionality does not extend to the entire act, but only to the amendments, in so far as they direct an appraisement before an interested officer. These only fail, with the result that the original act, in reference to the method of procedure provided by it for the appointment of appraisers by the surrogate, still continues to be the law, and will be observed in this case.

The suggestion has been made that the right of inheritance is a privilege granted by the legislature, and can be taken away without violating the constitution. In his book upon the fourteenth amendment to the constitution of the United States, Mr. Guthrie ably maintains that it is a common-law right, and that the only power that legislatures have is to regulate it within certain limitations. However this may be, it was held in the Illinois Inheritance Tax Cases, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037, that, even "if the power of devise or of inheritance be privileged, it must be conferred or regulated by equal laws." If, therefore, the power of a legislature is restricted under the constitution in this regard, it must be to the full extent of the spirit of the fourteenth amendment. A

person's property can only be taken by virtue of equal laws impartially administered. It cannot be maintained that the transfer tax assessed in one county by an interested appraiser was assessed on an equality with a tax assessed in another county by an impartial appraiser.

My attention has been called to In re McPherson, 104 N. Y. 306, 10 N. E. 685, in which the constitutionality of the act of 1885, taxing inheritances, was under consideration. In that case Judge Earl says:

"Then there is the right of appeal provided for in the same section. Any person dissatisfied with the appraisement or assessment may appeal therefrom to the surrogate of the proper county, on paying or giving security to pay all costs and the tax as fixed by the court. Upon such appeal there is another opportunity to be heard. The appeal is not limited to questions of law, but may be taken to the surrogate upon both the law and the facts, and he has ample power to correct any error brought to his attention. For the purpose of making such correction, he is not bound by the estimate of the appraisers, or by the facts which appeared before him, but he may hear such new evidence and allegations as may be properly presented to him."

There was no such question in the McPherson Case as is now presented to the court, and I do not think the language of that case can be tortured or twisted into the proposition that, because there is the right of appeal, it makes no difference whether the original hearing is before an interested or prejudiced appraiser or not. The constitution, under the term "due process of law," guaranties a fair trial and hearing, before an impartial tribunal, in the first instance only. Railroad Co. v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031; Railroad Co. v. Backus, 154 U. S. 438, 14 Sup. Ct. 1114, 38 L. Ed. 1040; McKane v. Durston, 153 U. S. 684, 14 Sup. Ct. 913, 38 L. Ed. 867; Andrews v. Swartz, 156 U. S. 272, 15 Sup. Ct. 389, 39 L. Ed. 422; People v. Trezza, 128 N. Y. 529, 28 N. E. 533. Under these authorities, it is clear that the legislature has the power to take away the right of appeal at any time without violating any of the constitutional rights of the people. I apprehend, however, that, even if the right of appeal could not be taken away, the right to an impartial trial or hearing, in the first instance, still existed. The very thought that the legislature might permit a hearing, at any stage, before an interested and partisan official, is repugnant. It may readily be conceived that in many cases it would be difficult to overcome on appeal a finding, in the first instance, which was dictated by personal interest. I have therefore no hesitation in saying that the remedy by appeal will not cure the vice in a statute which authorizes a trial, in the first instance, before an officer confessedly interested in the result. But, even if this were not so, the law of 1885 differs materially from the present transfer tax law in this respect: The law of 1885 did not make the surrogate's duty in assessing and determining the tax purely ministerial, while the present law does. In that there have been inserted the words "as of course," wherein it provides for the determination by the surrogate of the cash value of all assets, and the amount of taxes to which the same are liable. Under the act as it has existed since 1892, the surrogate must enter the decree assessing the tax upon the appraiser's report "as of course." The

.act does not authorize or permit the surrogate to consider anything further than the record from which the appeal is taken. There is no .authority in the act for the surrogate to take further evidence, or consider anything except the appraiser's report and such depositions ·or evidence as were before the appraiser. The jurisdiction of a surrogate is confined by the covers of the books containing the session laws. In Re Davis' Estate, 149 N. Y. 539, 44 N. E. 185, it was said ·"that the surrogate could only hear upon appeal the errors of the appraisers assigned in the notice of appeal."

I can find no force in the suggestions made by the counsel for the ·county treasurer and state comptroller, and must therefore decline to direct the county treasurer of Westchester county to make the .appraisement in this case. I will direct the appraisement to be had before an impartial and uninterested appraiser, pursuant to the law .and practice in force prior to the act of 1901. Decreed accordingly.