## In re GROUT, Comptroller.

(Supreme Court, Appellate Division, Second Department. May 5, 1905.)

1. GREATER NEW YORK CHARTER—CLAIMS—EXAMINATION OF WITNESSES.

   Greater New York Charter, § 149 (Laws 1901, p. 50, c. 466), provides that all payments by or on behalf of the corporation shall be made through the proper disbursing officer, on warrants of the comptroller, and that the latter may require any person presenting a claim to be sworn touching such claim, and to answer orally as to any facts relative to the justness of the same. Held that, where a corporation filed a claim against the city for lighting, the comptroller was authorized to examine one or more officers of such corporation as to the validity of the claim.

2. SAME—EXTENT OF RIGHT—COMMENCEMENT OF SUIT—EFFECT.

   The right of the comptroller of the city of New York to examine claimants against the city orally with reference to justness of their claims, as authorized by Greater New York Charter, § 149 (Laws 1901, p. 50, c. 466), does not survive the commencement of a suit to recover such claim, after which the city's right of examination is limited to that specified by Code Civ. Proc. §§ 390, 391, for the examination of a party before trial.

3. SAME—SCOPE OF EXAMINATION.

   The scope of an examination of a claimant against the city of New York by the comptroller, as authorized by Greater New York Charter, § 149 (Laws 1901, p. 50, c. 466), is limited to such questions as in good faith appear to be necessary to enable the comptroller to determine whether

he will settle the claim presented, and the questions asked must be competent and material to the determination of the justness of the claim.

**4. SAME.**

Where the comptroller of the city of New York denied any contract by which a claimant furnished electricity for municipal lighting, and that the claimant was only entitled to recover therefor on a quantum meruit, he was not entitled to inquire of claimant's officers, on an examination authorized by Greater New York Charter, § 149 (Laws 1901, p. 50, c. 466), as to the circumstances resulting in the forming of the claimant corporation, the statements then prepared as to the actual value of claimant's plant, irrespective of its franchise privileges, etc., which questions had no bearing on the reasonable value of the electricity furnished.

**5. WITNESSES — REFUSAL TO ANSWER — IMPRISONMENT — STATUTES — CONSTITUTIONALITY.**

Code Civ. Proc. § 856, authorizing any judge, on proof by affidavit that a person subpœnaed and attending before the comptroller refuses to answer legal and pertinent questions, by warrant to commit the offender to jail, there to remain until he submits to answer such questions, is unconstitutional, as depriving a citizen of his liberty without due process of law.

Appeal from Special Term, Kings County.

Application of Edward M. Grout, as comptroller of the city of New York, for a warrant for the arrest and committal to jail of Joseph Williams for his refusal to answer questions concerning a claim against the city of New York. From an order committing Williams to jail, he appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

William N. Dykman (Samuel A. Beardsley and Henry J. Hemmens, on the brief), for appellant.

Henry Yonge, for respondent.

RICH, J. On May 12, 1903, the New York Edison Company, a domestic corporation, filed with the respondent a claim against the city of New York for $187,806.58 for electric light furnished to the various departments of the city from January 1, 1903, to and including April 30, 1903, and from time to time thereafter filed similar claims covering a period down to March 15, 1904. These claims were not audited or paid by the comptroller, and on December 23, 1904, an action was commenced in the Supreme Court for their recovery. The city appeared in the action by its corporation counsel, and the action was pending and undetermined at the time the proceeding was commenced for the examination of the appellant, resulting in the order appealed from.

Prior to the time of furnishing this light the company had filed sealed proposals pursuant to an advertisement for furnishing, operating, and maintaining electric lamps for lighting the streets, parks, and public buildings in the boroughs of Manhattan and the Bronx preparatory to contracts therefor with the successful bidders, and its claims were based in conformity with the prices for the service as stated in such proposals. These proposals had been rejected, but the conduct of the city officials had been such that the company claimed, and now contends, that, notwithstanding such

rejection, the electric light for which it sought compensation was furnished under a contract therefor, while the position of the comptroller is that there was no contract, and the company must recover, therefore, on a quantum meruit.

It appears that in 1904 the city entered into contracts for lighting at substantially the same units of price as had been charged by the company for the light furnished by it in 1903, and in view of these contracts the comptroller had under advisement an adjustment and settlement of the outstanding claims for the light furnished in 1903. While the matter was under consideration, and before he had reached a conclusion, William Randolph Hearst commenced an action in the Supreme Court against the mayor, comptroller, and other officers of the city of New York, its purpose being to prevent a settlement of these bills at the amounts claimed. In that action the comptroller served an amended answer, in which he alleged that he had abandoned the proposed settlement, and had determined to resist such bills to the utmost. The comptroller and other officers of the city were restrained by injunction, during the pendency of the action, from auditing, allowing, or paying any of the bills for electric lighting furnished by said company between January 1, 1903, and March 1, 1904. On January 6, 1905, Joseph Williams, the assistant secretary and assistant treasurer of said New York Edison Company, was served with a subpœna, issued by the comptroller under the provisions of section 149 of the New York City Charter (Laws 1901, p. 50, c. 466), requiring his appearance before that officer to be sworn "touching and concerning the claims presented against the city of New York by the New York Edison Company for electric lighting, and then and there to answer all questions as to facts relative to the justness of such claims." Williams obeyed the subpœna so far as attendance and being sworn as a witness were concerned, but during the examination he was asked the following questions, among others:

"Q. Were you familiar with the circumstances and the situation leading up to and resulting in the formation of The New York Edison Company? Q. Did you, at the time of the formation of the new company, prepare any statements, or take part in the preparation of any statements, as to the actual value of the plants irrespective of the franchises or monopoly privileges? Q. As assistant secretary and treasurer are you the active man in the duties of treasurer? Q. As assistant secretary are you the active man in the duties of that office? Q. As assistant secretary and treasurer do you attend the meetings of the board of directors? Q. Do you keep the minutes of such meetings? Q. Who does keep the minutes of such meetings? Q. During the time that you have been connected with the New York Edison Company have you ever seen any statement, estimate, or a paper relating to the cost of production and distributing electric light per kilowatt hour reduced to a basis of kilowatt hour? Q. Did you take part in the preparation of the estimates or other data that resulted in the bid for the electric lighting in the boroughs of Manhattan and the Bronx for the year 1903? Q. Do you know whether or not the element of the cost of production to the company was taken into consideration? Q. Do you know whether or not the element of maintenance was taken into consideration? Q. Do you know whether or not the question as to whether this was a fair market price was taken into consideration? Q. Do you know whether or not these matters were taken into consideration at all? Q. Do you know whether or not

there had been any meeting between any officer or agent of your corporation and any officer or agent of any other corporation supplying electricity in the boroughs of Manhattan or the Bronx? Q. Do you know whether by any agreement between the corporations there was but one bid made for a given area? Q. Are there any books that you are aware of in the New York Edison Company which show the cost of production? Q. Do you know whether there are any books kept by your company which separate the items, which in any way divide the expense of the company under groups or heads, like maintenance account, capital account, distribution account, or in any manner of that kind? Q. Is there any engineer's report to the president or board of directors, or any other officer, or to yourself, concerning the cost of production? Q. Do you know what the cost of production is?"

These questions the witness declined to answer, under the advice of counsel, stating his reasons and objections to each question as asked, which were taken and entered in the minutes as follows:

"First. On the ground that the comptroller had rejected the claims concerning which he had subpœnaed the witness to testify, and he was without either authority or jurisdiction herein, and had no power either to subpœna or examine witnesses in regard to the justness of the alleged rejected claims. Second. On the ground that the comptroller had no jurisdiction or authority under the charter of Greater New York, and particularly under section 149 thereof, or under the Code of Civil Procedure, or under any law or statute of the state of New York, to inquire into any matter concerning the capital stock of the New York Edison Company, or its bonded indebtedness, or the cost to it of generating and distributing electricity furnished to the city of New York for lighting or power purposes, or to maintain the system over, through, or by which it distributes electricity to the city of New York for lighting or power purposes. Third. Also on the ground that the intent and purposes of the examination and of the questions propounded to the witness are in violation of the constitutional rights and privileges of the New York Edison Company, and are inquisitorial in their nature, and are not within the intent or meaning of section 149 of the charter of Greater New York, or of any law or statute of the state of New York. Fourth. Also on the ground that the witness should not be compelled to disclose the private papers and documents and private business matters of the New York Edison Company. Fifth. Also on the ground that the claim is founded on a contract made pursuant to public letting, and therefore the comptroller has no jurisdiction to examine into the same, on the ground that it is not subject to special audit or investigation, as the prices are fixed by contract and the only subject of inquiry is as to the accuracy and correctness of the account rendered. Sixth. Also on the ground that litigation has actually been instituted by the New York Edison Company against the city of New York for the recovery of the amount due, and other litigation is threatened, and the court is the proper tribunal for such investigation. Seventh. Also on the ground that the questions propounded are immaterial, incompetent, and irrelevant."

The comptroller thereupon procured from Mr. Justice Marean an order requiring the witness to show cause why he should not be committed to jail until he submitted to answer said questions, upon the return of which the order appealed from was granted.

The reasons presented by the witness to the comptroller and stated as the grounds of his refusal to answer the questions form the foundation upon which counsel for the appellant bases his argument in this court, with the additional question as to the constitutionality of section 856 of the Code of Civil Procedure, under the provisions of which the order was granted, and require a construction of section 149 of the charter of Greater New York, including a determination of the powers of the comptroller thereunder, and the extent of the examination authorized. Section 149,

so far as it applies to the questions under consideration, provides as follows:

"All payments by or on behalf of the corporation, except as otherwise specially provided, shall be made through the proper disbursing officer of the department of finance, on vouchers to be filed in said department, by means of warrants drawn on the chamberlain by the comptroller, and countersigned by the mayor. The comptroller may require any person presenting for settlement an account or claim for any cause whatever, against the corporation, to be sworn before him touching such account or claim, and when so sworn, to answer orally as to any facts relative to the justness of such account or claim. * * * He shall settle and adjust all claims in favor of or against the corporation, and all accounts in which the corporation is concerned as debtor or creditor."

By the provisions of section 261 of the charter an action is properly commenced against the city upon a claim or account at any time after the expiration of 30 days from the time of its presentation to the comptroller, followed by his neglect or refusal for that length of time after presentation, to adjust or pay it. Certain well-defined and established principles of law, requiring no citation of authorities, are to be observed in the construction of statutes. The intention of the lawmakers must be sought. When ascertained, it should be followed with reason and discretion, although such construction may seem contrary to the letter of the statute. The lawmakers cannot always foresee all the possible applications of the general language they use, and it frequently becomes the duty of courts, in construing statutes, to limit their operation so that they shall not produce absurd, unjust, or inconvenient results not contemplated or intended. A case may be within the letter of the law, and yet not within the intent of the lawmakers, and in such a case a limitation or exception must be implied. In determining the intention of the Legislature, existing conditions and laws and the necessity for making the statute may be considered. Statutes in pari materia should be construed together, and statutes in derogation of the common law must be strictly construed. The examination by the comptroller of a person presenting a claim against the city of New York was first authorized in 1873 by substantially the same language as is now contained in section 149. Laws 1873, p. 492, c. 335, § 29. The reason for conferring that power seems to have been the conditions existing in the city of New York, then under the control of the so-called "Tweed Ring," resulting in the looting of the city treasury by fictitious, illegal, and grossly excessive claims, which were audited and allowed by the heads of different departments, upon whose audit they were paid; and the consequent need of fixing and placing the responsibility for the adjustment and settlement of claims upon a single officer, and vesting him with the power and means of determining their justness through the power to subpœna and examine the claimant. I am unable to concur in the contention of counsel for the appellant that the comptroller was without power or authority, under the provisions of section 149, to examine the appellant, upon proper subjects and within proper limits, as to the claim of the New York Edison Company, of which he was an officer. Due considera-

tion of the conditions existing at the time of its passage, impera-
tively requiring its enactment, and its wording, eliminate from my
mind all doubt of its being the intent of the Legislature to include
corporations among the "persons presenting claims" who might,
under its provisions, be required by the comptroller to appear before
him and submit to an examination relative to the justness of their
filed claims; and the right of examination so given is not limited to
any one officer of the corporation. The examination of any of
its officers having, or supposed to have, within his knowledge or
at his command, the information sought, is authorized by sec-
tion 149, nor does the exercise of the power as to one officer de-
prive the comptroller of the right to examine other officers of the
corporation claimant upon the subject-matter of the claim. Under
no other construction can the purposes and benefits of the section be
secured to the city. Long prior to and at the time of the enactment
of the statute of 1873 the Code of Procedure had, by section 158,
provided for a bill of particulars of the account of an adversary, and
by sections 390 and 391 for the examination of a party to a pend-
ing action upon or before its trial, under which the courts had held
that such an examination was an absolute right, and might be had
either before or after issue joined (Cook v. Bidwell, 29 How. Prac.
483; Fullerton v. Gaylord, 7 Rob. 552), and even before the service
of the complaint (Duffy v. Lynch, 36 How. Prac. 509); that the
right of examination extended to all matters pertinent to the
issues, if formed (Cook v. Bidwell, supra); and, if issue was not
joined, the range of the inquiry was within the discretion of the
judge before whom the examination was being taken (Plato v.
Kelly, 16 Abb. Prac. 188); and that, if the witness refused to an-
swer a pertinent or proper question, the judge should commit him
for contempt. Such of the provisions of these sections as survived
the adoption of the Code of Civil Procedure were incorporated and
continued therein (sections 531, 870, 872, 873). At the time of the
enactment of the statute of 1873, containing practically the same
language as that portion of the provisions of section 149 of the
present charter now under consideration, it was within the power
of the city of New York, proceeding under the sections of the
Code of Procedure cited, to acquire, after the commencement of
an action against it, all the information desired from a plaintiff
on proper and pertinent matters involved in the issues joined or
apprehended from the commencement of the action; and the pas-
sage of the section conferring upon the comptroller the right of
examination referred to was not necessary or required for that
purpose, and excludes the contention of the comptroller, and
the conclusion reached by Justice Marean that the right of ex-
amination afforded by section 149 survives the commencement
of an action based on the claim as to which information is thus
sought or can thereafter be legally exercised. This conclusion
seems to have been (inferentially, at least) reached by the Gen-
eral Term of the Court of Common Pleas in Meyer v. The Mayor,
12 N. Y. St. Rep. 674, and by Justice Patterson, sitting at Spe-
cial Term of the Supreme Court, in Frankel v. The Mayor, 2 N.

Y. Supp. 294. I think that the legislative intent was solely to vest in the comptroller the right and power to compel the attendance of and to examine a claimant upon such matters connected with or pertinent to the justness of his claim as would enable such official to intelligently determine whether to adjust, settle, and pay it, thus saving the expense of litigation to the city; or, in the event of doubt, after ascertaining such facts as to its legality, excessiveness, inability to settle or compromise for a reasonable amount, or other sufficient reason, in his judgment, to reject it, and thus compel the claimant to commence his action; and such examination, if desired, must be had before the commencement of action, which must be delayed for 30 days after the presentation of the claim (section 261), at the expiration of which time, the comptroller having neglected or refused to make an adjustment of the claim, the claimant has the right to commence his action for its recovery, and with its commencement the right of examination of the claimant by the comptroller under the provisions of the section ends, and information thereafter desired must be sought under the provisions of the Code of Civil Procedure.

Nor can I concur in the contention of the learned counsel for the respondent that the power of the comptroller under section 149, as to the questions he may ask and compel the claimant to answer, is unlimited, and without restriction. When, as in this case, the comptroller seeks the aid of the court to punish a claimant for not answering questions, he must make it appear that the examination authorized by the section is necessary to enable him to determine in good faith whether or not he will adjust and settle the claim presented; that the questions asked are pertinent, and are confined to the justness of the claim. Considered from this standpoint, they should be competent, material, and irrelevant. In these particulars the power of the comptroller is limited by the purposes and objects of the examination as expressly defined by and stated in the section. Nothing short of the establishment of such facts by convincing and satisfactory proof, or inference properly deducible therefrom, should be accepted by the court as furnishing a sufficient and adequate reason for its action in enforcing answers by the harsh and extreme punishment of imprisonment. It appears that the information sought to be obtained by the examination of the witness Williams as an officer of the corporation claimant was not desired for the purposes contemplated by section 149, for the comptroller had, before he required the witness to appear and testify, rejected the claims, and had declared that he had absolutely abandoned all idea of settlement, and determined to resist the claims to the utmost; and within 10 days after such declaration the company had commenced action to compel payment of these claims. The comptroller had retained possession of the claim first filed from May 13, 1903, to January 6, 1905, and of the claim last filed almost, if not quite, nine months after its presentation, without any attempt or effort to avail himself of an examination as to their justness, which he could have enforced at any time down to December 23, 1904, the time when the action was commenced.

I do not overlook the contention of counsel that the comptroller has power to adjust a .claim by way of confession of judgment, continuing during the pendency of the action, from which he argues the possession of authority under the provisions of section 149 to acquire information tending to aid him in arriving at an intelligent and proper conclusion as to the advisability of the exercise of such power. The answer to this contention is: First. That since the amendment to section 255 of the charter of Greater New York by chapter 284, p. 626, of the Laws of 1900, the comptroller does not possess the power to confess judgment in an action against the city. By that amendment, his power in respect to confessing judgment in a pending action is limited to a written approval of the corporation counsel; and in the action brought by the New York Edison Company it appears that the written approval of the mayor is also made a condition precedent to such action by the corporation counsel. Second. The record discloses no evidence, nor does the comptroller make any claim that he has, or had at the time of the examination of Williams, any intention of adjusting in any manner or settling or paying the claims on which the action is founded, or that he seeks the evidence for that purpose. His verified answer in the Hearst action establishes that he does not. But, even, if he did, he would be limited in his right to examine the claimant by the provisions of the Code of Civil Procedure. The examination authorized is restricted by the provisions of the section to matters relating to and tending to establish the justness of the claim presented. Conceding the contention of the comptroller that the claim of the Edison Company is not based upon a contract in which the compensation for the electricity has been agreed upon, the examination of the appellant was restricted to matters connected with the actual furnishing of the light, and its fair value. I do not understand any claim to be made by the comptroller that the light included in the claims was not actually furnished, which further restricts the question to be considered by us on this branch of the case to the determination of whether the evidence sought by the questions asked, the witness would aid the comptroller in judging of the fair or market value of the light so furnished. After careful examination I reach the conclusion that it would not, and that section 149 does not warrant or authorize an inquiry as to many of the matters embraced within the questions asked of the witness. Of this character are the questions as to the circumstances resulting in the formation of the New York Edison Company, and the statements, then prepared, as to the actual value of the plant irrespective of franchise privileges. These questions are inquisitorial in their nature, and require answers disclosing the private business affairs of the company. They relate to matters which, on such examination, the comptroller was not entitled to be made conversant with, and were not contemplated by, and are not within the intent or meaning of, section 149. The fair inference is deducible from the facts shown by the record that the evidence sought was desired for purposes not within the contemplation of the section under which it was attempted to be

procured, and does not warrant this court in sustaining the order directing the imprisonment of the witness until such time as he answers the questions asked him by the comptroller.

The provisions of section 856 of the Code of Civil Procedure, which authorize any judge, upon proof by affidavit that a person subpœnaed and attending before the comptroller refuses without reasonable cause to answer on such examination legal and pertinent questions, to by warrant commit the offender to jail, there to remain until he submits to answer such questions, are unconstitutional, in that they deprive a citizen of his liberty without due process of law. Assuming them to apply to this case, they authorize a judge in any part of the state to summarily determine on affidavits of the moving party, and without notice to the witness proceeded against, or opportunity to be heard, that the questions asked are legal and pertinent, and that the refusal of the witness to answer is without reasonable cause, which determination must precede, and constitutes the justification for, the order of imprisonment. This is an arbitrary and direct invasion of the constitutional rights of a citizen in all cases where, as in this, the alleged offense was not committed in the presence of the judge making the order and determining the questions upon which the power to grant it is dependent. Such power cannot constitutionally be conferred upon a judge of any court. The federal courts and nearly all state courts have for many years united in so declaring, and the Court of Appeals, as early as 1878, in Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289, declared that a hearing, or an opportunity to be heard, in which the citizen may defend, enforce, and protect his rights, is absolutely essential to constitute due process of law; which principle has since been followed by all our courts, and is now so firmly established as the law of this state as to be beyond controversy. So carefully have the courts guarded this constitutional and sacred right of the citizen that statutes omitting this required essential have uniformly been condemned, even where it appeared, as it does in this case, that the party proceeded against was permitted, through the courtesy of the court, to have, and did have, notice of the proceeding and opportunity to be heard. It is not enough that a person may by chance have notice, or that he may, as a matter of favor or courtesy, have a hearing. The law itself, to be constitutional, must require notice, and give a right to a hearing. It matters not, upon the question of the constitutionality of such law, that the questions involved have been fairly decided. The essential validity of the law is to be tested not by what has been done under it, but by what may by its authority be done. Stuart v. Palmer, supra; Gilman v. Tucker, 128 N. Y. 190, 200, 28 N. E. 1040, 13 L. R. A. 304, 26 Am. St. Rep. 464; Coxe v. State, 144 N. Y. 396, 408, 39 N. E. 400; Colon v. Lisk, 153 N. Y. 188, 194, 47 N. E. 302, 60 Am. St. Rep. 609.

The order appealed from should be reversed, with costs.

Order reversed, with $10 costs and disbursements, and motion denied, with costs. All concur.