STEVENS v. ANDREWS, Sheriff of St. Louis County.

1. The stay law of March 7, 1861, is unconstitutional in its application to executions issued upon judgments rendered previous to the passage of said act.

This cause came before the supreme court on a motion made by Stevens, defendant, in the case of Boxley v. Stevens, reported ante, p. 201, for an order prohibiting the sheriff of St. Louis county from selling the real estate of the said defendant Stevens under an execution until within fifteen days of the next October term of the supreme court. The said execution was issued from the office of the clerk of the supreme court on the 18th of January, 1861, under a judgment rendered against the said Stevens in the supreme court

14—VOL. XXXI.

in the above case of Boxley v. Stevens, at the October term, 1860. Said execution was returnable to the March term, 1861, of the supreme court. The above motion, made at said March term, 1861, is based upon the ground that by the stay law of March 7, 1861, * said real estate could not be sold under execution until within fifteen days of the next term of the supreme court.

*Lackland, Cline & Jamison*, for Stevens, cited 3 Binn. 277, 417; 17 Mo. 603; 11 Mo. 411; 4 Scam. 364; 5 Watts & S. 488; 1 McLean, 528; 4 Humph. 13; 6 Blackf. 373; 1 Ala. 312; 5 How. 285; 4 W. & S. 218; 6 Shep. 109; 1 McLean, 35; 8 W. & S. 49; 1 Hemp. 119, 313; 11 Mo. 188, 344, 545; 16 Mo. 68; 2 Blackf. 8; 3 Marsh. 73; 6 How., Miss., 625; 8 Pet. 110; 1 Bald. 74; 2 Pet. 414; 11 Pet. 420.

*R. H. Gamble*, for the Sheriff.

*Glover & Shepley*, for Boxley.

NAPTON, Judge, delivered the opinion of the court.

This is a motion to prohibit the sheriff of this county from proceeding to sell the property of the applicant, on an execution issued by the clerk of this court, on a judgment rendered at the last term and returnable to the present term. The

---

* The provisions of this act are as follows: " Sec. 1. All executions issued upon any judgment rendered by any court of record shall be returnable to the second term of said court after the date of said execution. Sec. 2. All executions now issued from any court of record in this state shall be returnable to the second term after the date of said writ, as now provided by law. Sec. 3. All executions issued by justices of the peace upon judgments rendered by them shall be returnable in twelve months from the date of said writ. Sec. 4. No property shall be sold by virtue of any execution until within fifteen days of the return day thereof, provided that if the property be personal the defendant shall give bond for the delivery thereof on the day of sale at such place as the officer may direct. Sec. 5. All executions now issued by justices of the peace shall be returnable twelve months from the date of such execution. Sec. 6. All laws inconsistent with the provisions of this act are hereby suspended until the first day of January, A. D. eighteen hundred and sixty-three. Sec. 7. This act shall take effect and be in force from and after its passage, and shall continue in force until the first day of January, A. D. eighteen hundred and sixty-three."

ground of the application is that by an act of the legislature, passed March 7, 1861, it is provided that all executions issued at the time of the passage of said act shall be returnable to the second term after the date of said writs, and that no real estate shall be sold under an execution until within fifteen days of the return thereof. Previously to this enactment executions were returnable to the next succeeding term of the court after their issuance, and the execution in this case issued before the passage of the law, and was returnable to the present term of this court.

The only question presented by the motion is the validity of the act referred to, so far as it applies to this execution.

In the case of Bailey v. Gentry and wife, decided by this court in 1822, the act of the legislature of December 28, 1821, "pointing out the manner that executions may be stayed, and regulating the sale of property under execution," was decided unconstitutional and void. That act was in substance both a valuation law and a stay law. Its purpose was, on its face, to effect a suspension of the creditor's power to collect his debt for two years and a half, unless he would take the debtor's property at two-thirds of its appraised value, or could effect a sale of it by the sheriff at that price. The act was considered by the court as an infringement of that provision of our constitution and of the constitution of the United States, which prohibits laws impairing the obligation of contracts, and also in conflict with the section of our declaration of rights, which require "right and justice to be administered without sale, denial or delay."

In the case of Brown v. Ward, 1 Mo. 209, the same question was raised and determined in conformity with the opinion in Bailey v. Gentry.

In the case of Bumgardner v. Clerk of Howard County, 4 Mo. 50, the twelfth section of the act of March 21, 1835, providing for a stay of execution from justice's courts, on certain conditions specified, was held to be invalid. This opinion was delivered in the same year, and shortly after the passage of the act.

The Supreme Court of the United States, in the case of Bronson v. Kenzie, 1 How. 311, had under consideration an act of the legislature of Illinois, which prohibited the sale of property under execution for less than two-thirds of its appraised value, and they held the law to be unconstitutional, so far as it attempted to act upon contracts made before its passage. The law was considered as impairing the obligation of the contract by substituting a remedy substantially less efficacious than the one existing when the contract was made.

In the case of McCracken v. Hayward, 2 How. 608, this decision in Bronson v. Kinzie was renewed, and the law of Illinois was again declared unconstitutional. In the opinion of the court, in this last case, the judge delivering it said: " The obligation of the contract between the parties in this case was to perform the promises and undertakings contained therein; the right of the plaintiff was to damages for the breach thereof, to bring suit and obtain judgment, to take out and prosecute an execution against the defendant till the judgment was satisfied, pursuant to the existing laws of Illinois. These laws, giving these rights, were as perfectly binding on the defendant and as much a part of the contract as if they had been set forth in its stipulations in the very words of the law relating to judgments and executions. If the defendant had made such an agreement as to authorize a sale of his property, which should be levied on by the sheriff for such price as should be had for it at a fair public sale, on reasonable notice, it would have conferred a right on the plaintiff which the constitution made inviolable; and it can make no difference whether such right is conferred by the terms or law of the contract; and subsequent law which denies, obstructs or impairs this right by superadding a condition that there shall be no sale for any sum less than the value of the property levied on, to be ascertained by appraisement or any other mode of valuation than a public sale, affects the obligation of the contract as much in the one case as the other, for it can be enforced only by a sale of the

defendant's property, and the prevention of such sales is the denial of a right."

It will be perceived that valuation and stay laws have been declared unconstitutional by this court as early as 1822, and that these decisions have been acquiesced in now for nearly forty years. It can not be claimed that any discrimination could, with any plausibility, be attempted between the law now under consideration and the two acts of the legislature heretofore passed upon. These adjudications, by preserving the inviolability of private and public contracts, have resulted in placing the credit of our state and citizens on a high and safe basis, beyond the reach of a class of laws holding out promises of relief to one portion of the community at the the expense of another—promises which all experience proves to be illusory, and in the end essentially injurious to those for whose benefit they profess to be made.

The propriety of overruling these decisions, even did they not meet the entire concurrence of the judges now composing the court, might very well be questioned. But the decisions of the Supreme Court of the United States, in the two cases cited, are quite as conclusive on the subject as the adjudications here. It is not necessary that we should, in order to determine this application, adopt the reasoning of Judge Baldwin, in the extract quoted from his opinion, without qualification. His views might appear to lose sight of all distinction between rights and remedies, and might be perhaps perverted into a denial of all power in a legislature to make changes in the remedies for existing contracts—a power which is universally conceded under proper limitations, and which is more specifically referred to by C. J. Taney in the case of Bronson v. Kinzie. We prefer the more guarded, and, in our judgment, the more reasonable exposition of this restriction upon the legislative power over remedies advanced by Judge Haywood of Tennessee, in the case of Townshend v. Townshend. (Peck's R. 1.)

"The contract," says Judge Haywood, "is made by the parties, and if sanctioned by law it promises to enforce per-

formance, should the party decline performance himself. The law is the source of the obligation, and the extent of the obligation is defined by the law in use at the time the contract is made. If this law direct a specific execution and a subsequent act declares that there shall not be a specific execution, the obligation of the contract is lessened and impaired. If the law in being at the date of the contract gives an equivalent in money, and a subsequent law says the equivalent shall not be in money, such act would impair the obligation of the contract. If the law in being at the date of the contract gives immediate execution on the rendition of the judgment, a subsequent act, declaring that the execution shall not issue for two years, would lessen or impair the contract equally as much in principle as if it suspended execution forever, in which latter case the legal obligation of the contract would be wholly extinguished. The legislature may alter remedies, but they must not, so far as regards antecedent contracts, be rendered less efficacious or more dilatory than those ordained by the law in being when the contract was made, *if such alteration be the direct and special object of the legislature, apparent in an act made for the purpose.*"

We do not question the power of the legislature over remedies, whether they relate to past or future contracts, provided the new remedy does not impair the obligation of the contract. It is the unquestioned power of the legislature to regulate the modes of proceedings in their courts, and prescribe the forms of process both final and *mesne*, and their manner and time of execution. General laws relating to the modes of proceeding, both before and after judgment, would hardly be called in question, although applied to past contracts merely, because of some incidental effect favorable to the plaintiff or defendant in the suit. Certainly their validity in reference to future contracts can not be doubted.

But we deem it unnecessary to go into any investigation of the validity of such general changes in the legal systems by which justice is administered. The act now under con-

sideration is not designed to make any permanent change in the forms of proceedings heretofore in use.   On the contrary, the old system is retained ; and the act, without changing the rule, attempts to suspend its operation.   It recognizes the propriety of letting executions run for six months, as the permanent rule, but it suspends this general regulation for two years, and applies the suspension to past contracts.

It may indeed be said that it applies the exception to past contracts only, for new contracts of any importance could hardly be made and broken, and suit brought and prosecuted to judgment, and execution issued before the expiration of the act.   However this may be, we have now to speak only in reference to the effect of the law on past contracts, which have been merged in judgment, and upon which executions have issued prior to its passage.   The object of the act is to make a temporary suspension of the remedies for the collection of debts, and this appears on its face.   If the act had in so many words declared that the execution in this case of Boxley v. Stevens, issued by the clerk of this court on a judgment rendered last term, should not be, as by law and on its face it was, returnable at this term, but should be returnable six months thereafter, it is not perceived that it would have been substantially different from the enactment as it now stands.   The legislature have as much power to interfere with all the contracts in the state as they have to interpose between the plaintiff and defendant in this case ; and to include all executions similarly situated with the present, does not alter the validity of the law.

By referring to the case of Bumgardner v. The Clerk of Howard County, (4 Mo. 50,) we do not mean to be understood as assenting to the application made by the court in that case of the principles of Bailey v. Gentry and wife to the act of 1835.   The report of the facts of this case of Bumgardner v. The Clerk of Howard County is so imperfect that it is impossible to learn whether the contract made was anterior or subsequent to the enactment.

The motion is overruled.