PREISER v. WIELANDT et al.

(Supreme Court, Appellate Division, Second Department.    March 6, 1900.)

LANDLORD—EVICTION—SICKNESS.
    Plaintiff's lease of defendant's premises expired on Sunday, June 5th.
On May 30th, when plaintiff was notified to vacate, he informed defendant
that his wife was sick, and unable to leave her bed without danger.    On
June 6th defendant's workmen commenced tearing down the house, which
created considerable noise, and brought a large quantity of dust into the
sick-room, causing plaintiff's wife violent fits of coughing, and made her
excited and hysterical.    During the next day, while the work of tearing
the house down was continued, plaintiff removed his wife, which so aggra-
vated her sickness that it resulted in death a few days later.    *Held*, that
defendant was liable, though deceased suffered no immediate personal
injury, and her death was due solely to fright and excitement.

Appeal from trial term, New York county.

Action by Luis Preiser, as administrator of the goods, chattels,
and credits of Fannie Preiser, deceased, against Michael Wielandt
and another.    From a judgment for defendants, plaintiff appeals.
Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH,
WOODWARD, and HIRSCHBERG, JJ.

Frank Herwig, for appellant.
Charles C. Nadal, for respondents.

HIRSCHBERG, J.    This action is brought to recover damages
because of the death of plaintiff's intestate, as the result of alleged
negligent and wrongful acts of the defendants.    The defendants are
the owners of the premises No. 605 East Sixth street, in the borough
of Manhattan, city of New York.    On the 5th of May, 1898, the
plaintiff leased apartments in these premises for the period of one
month, paying the rent in advance, and moving in with his family,
comprising his wife, the decedent, and their child.    The plaintiff's
wife, who had previously been a strong, healthy woman, able to
do housework and to carry on the business of dressmaking, was
taken ill the latter part of the month, and was confined to her bed.
She was suffering from heart disease, and was also advanced five
months in pregnancy.    On the 30th of May she informed her hus-
band that during his absence some men had called and informed
her that they would have to move the 1st of the month, whereupon
the husband called on the defendant Wielandt, informed him of his
wife's condition, and exhibited to him a certificate of the family phy-
sician to the effect that Mrs. Preiser was suffering from heart disease
and its consequences, and was unable to leave her bed without danger.
The defendant replied:    "I don't care.    I gave my orders.    We have
to build the house, and you have to move."    The 5th of June, one
month from the date of hiring, fell on Sunday.    On the following day
men commenced tearing down the house, acting under the defend-
ant's orders.    This created considerable noise, and brought a large
quantity of dust into the sick-room, which, besides bringing on vio-
lent fits of coughing upon the part of the plaintiff's wife, made her
excited, nervous, and hysterical.    The plaintiff again went to see

Mr. Wielandt, told him of the sick condition of his wife, and asked him to come into the house and verify the fact. He said: "I can't move. I would like to move, but it is impossible." The defendant replied: "I have given orders to my men to tear down the house, and you have to move." The process of tearing down the house was continued, with the necessary accompaniments of noise, disturbance, excitement, and dust, during which, and on the following day, the plaintiff managed to remove his wife to other premises. Her condition, however, became so serious that she was removed to a hospital on the succeeding Saturday, where she suffered a miscarriage that night, and died three days afterwards.

At the close of the plaintiff's direct examination, in the course of which these facts were elicited, the learned trial court intimated that there could be no recovery, and, for the purpose of presenting the question on appeal, dictated offers, which the plaintiff's counsel accepted, designed to supplement the case with medical evidence tending to establish the physical condition of the wife at the time of her removal, and her subsequent miscarriage and death, as the results of the defendant's acts in tearing down the house. The plaintiff asked to go to the jury on all the questions, specifically, which were presented by the pleadings and the proof, which request was denied, and to which denial he excepted. The complaint was then dismissed, apparently on the ground that the plaintiff and his family had no right to remain in possession of the leased premises on the 6th day of June, when the work of demolishing the building commenced. The court said:

"Of course, if they were obliged to wait that day, they would have been obliged to wait every day for the rest of the four months, would they not?"

The plaintiff's attorney replied:

"No; because she was not, before that, suffering from any effects of a premature birth, but from the result of heart failure, which would have passed off."

To this the court responded:

"Suppose they would have waited that day; they would have to wait from day to day. If your client had a right to demand delay for that day, then he had a right to demand delay for every day thereafter as long as she remained sick; and, if she remained sick sixty days, then he had a right to demand that delay."

The status of a tenant remaining in possession after the term, by reason of the sickness either of himself or of a member of his family, was settled by the court of appeals, after this trial, in the case of Herter v. Mullen, 159 N. Y. 28, 53 N. E. 700. In the prevailing opinion it is said (page 39, 159 N. Y., and page 703, 53 N. E.) that:

"The mere fact that the tenant or some member of his family is obliged to remain in a room in the house after the expiration of the demised term may not necessarily amount to a trespass. Whether it does or not must depend upon circumstances. If he is detained there by the act of God or of some superior legal power, or some unavoidable necessity, he is not ordinarily deemed to be a trespasser. A trespass presupposes some wrongful act towards the person or property of another. If the tenant in this case actually held over, the plaintiff could maintain ejectment against him; but since his intention to remove on the day the lease expired is clear, and this purpose was defeated

only by the dangerous illness of a member of his family, it would, I think, be difficult to say that he had such a possession of the house as would support an action of ejectment, and the same facts and circumstances that would protect him from such an action would also defeat the present claim, which is based upon the theory of an implied agreement to lease for another year."

It does not clearly appear whether the work of demolishing the building commenced before noon of June 6th. The circumstance is not controlling. The plaintiff and his family were rightfully in the premises up to that hour, and, if they were then detained by serious illness, they were still entitled to a reasonable opportunity to vacate the premises without unnecessary risk to life. They were not trespassers. The defendants had ample remedy by legal process for their summary removal, and, so far as the assault upon the house was designed to accomplish that removal by force, the act was wrongful and unjustified. It was made with full knowledge of the condition of the plaintiff's wife, and for all the natural and necessary consequences of their wrongful act the defendants are liable in this action.

The point is raised, however, by the respondents, that under the decision in Mitchell v. Railway Co., 151 N. Y. 107, 45 N. E. 354, 34 L. R. A. 781, there can be no recovery, because there was no actual, immediate, personal injury suffered by Mrs. Preiser, and her miscarriage and death were due solely to fright and excitement. The case referred to has no application to this one. It applies only to actions based on negligence, and not to cases of willful tort. In that case it was held that no recovery could be had for mere fright occasioned by negligence, and, as no action would lie for the fright alone, it necessarily followed that none could be maintained merely because the fright was followed by serious consequences. If the act complained of was not in itself actionable, the gravity of the consequences would not make it so. In this case, however, the act of the defendants was in itself wrongful. It was a willful and violent trespass upon the plaintiff's house, for which an action will lie; and if the death of the plaintiff's wife can be clearly and directly traced to it, as a natural and necessary consequence which they might or should have reasonably anticipated, the defendants are liable, even although no actual blow was struck in the course of the destruction of the building. The defendants knew her condition, and the risk to her which was involved in their contemplated act; and it would be ridiculous to say that, without the shadow of a right, they could tear the house down from over her head, with no liability for the consequences unless she chanced to be hit by a falling beam. In Spade v. Railroad Co., 168 Mass. 285, 47 N. E. 88, 38 L. R. A. 512, following the decision in Mitchell v. Railway Co., supra, in holding that there could be no recovery for bodily injury caused by fright and mental disturbance, the court said (page 290, 168 Mass., page 89, 47 N. E., and page 514, 38 L. R. A.):

"It is hardly necessary to add that this decision does not reach those classes of actions where an intention to cause mental distress or to hurt the feelings is shown, or is reasonably to be inferred,—as, for example, in cases of seduction, slander, malicious prosecution or arrest, and some others. Nor do we include cases of acts done with gross carelessness or recklessness, showing

utter indifference to such consequences, when they must have been in the actor's mind."

The rule does not include cases of wanton wrong, nor apply to the acts of a trespasser. As was said in Snow v. Pulitzer, 142 N. Y. 263, 269, 36 N. E. 1060, where the landlord took down a party wall, and deprived his tenant of its support:

"The defendant was a trespasser and a wrongdoer, and is just as responsible for the consequences of his acts as he would have been if he had removed the roof from the building, or entered the plaintiff's store and physically expelled him."

See, also, Serwe v. Railroad Co., 48 Minn. 78, 50 N. W. 1021, and Sloane v. Railway Co., 111 Cal. 668, 44 Pac. 320, 32 L. R. A. 193.

The judgment should be reversed, and new trial granted, with costs to abide the event. All concur.