GERARD, J.   The evidence offered by plaintiff disclosed that plaintiff and another boy ran after defendant's automobile, and the other boy jumped on it, and then, when some one yelled "Get off," the other boy tried to get off, but in getting down got stuck between the barrels on the automobile, and the plaintiff went to his assistance and pulled out his foot. .· At this time the automobile had stopped, and, the friend being free, plaintiff jumped off, but just at this time the automobile, without warning, backed uphill a distance of five feet, running over the plaintiff.

It makes no difference whether the friend was a trespasser on the automobile, or whether plaintiff came to his assistance, or not.   The plaintiff had a right to be in the public street.   The automobile of defendant was at a stop, and the unexplained sudden backing of the automobile, without any warning, calls at least for some explanation on the part of the defendant.   See Lundy v. Second Ave. R. R. Co., 1 Misc. Rep. 100, 20 N. Y. Supp. 691; Smith v. American Ice Co., 152 App. Div. 484, 137 N. Y. Supp. 290.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.   All concur.

---

(155 App. Div. 347.)

PROSPECT PARK & C. I. R. CO. et al. v. MOREY et al.

(Supreme Court, Appellate Division, Second Department.   February 28, 1913.)

1. QUIETING TITLE (§ 19*) — STATUTE — "ACTION TO DETERMINE CLAIMS TO REALTY"—COMPLAINT.

An action wherein the complaint prayed that certain deeds be canceled, that defendants be decreed to have no title, that plaintiffs be decreed to have title, and that defendants be enjoined from asserting title, and wherein it appeared that a considerable portion of the property was not in the possession of or claimed by the plaintiff, and that the legal title to a portion was in others, and that plaintiffs and defendants were only interested in the ownership of the proceeds of the sale thereof, could not be considered an "action to determine claims to realty" within Code Civ. Proc. §§ 1638, 1639, authorizing such actions.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 48; Dec. Dig. § 19.*

For other definitions, see Words and Phrases, vol. 1, p. 147.]

2. QUIETING TITLE (§ 4*)—BILL OF PEACE—RIGHT TO MAINTAIN—COMPLAINT.

Where a complaint alleged as a mere conclusion of law that the deed under which defendants claimed did not cover the land in controversy, and where extrinsic evidence would be necessary to establish such fact, the action could not be maintained as an equitable action in the nature of a bill of peace.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 5–13; Dec. Dig. § 4.*]

3. QUIETING TITLE (§ 7*)—RIGHT OF ACTION—DEEDS.

An action would not lie to set aside a deed in the defendants' chain of title either because it did or because it did not include the land in controversy, where such deed also included land as to which there was no dispute.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 14–33; Dec. Dig. § 7.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CONSPIRACY (§ 3*)—RIGHT OF ACTION.

A civil action for conspiracy will not lie where two or more persons conspire to do a lawful act in a lawful manner and cause damage thereby, even though they may have acted with a malicious motive.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 3; Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 2, pp. 1454–1461; vol. 8, p. 7613.]

5. INJUNCTION (§ 26*)—RIGHT OF ACTION—MAINTENANCE OF EJECTMENT.

The maintenance of ejectment in good faith will not be enjoined merely because the plaintiff in ejectment is entirely mistaken as to the validity of his claim.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24–49, 54–61: Dec. Dig. § 26.*]

6. INJUNCTION (§ 26*)—GROUNDS—MAINTENANCE OF EJECTMENT—"MULTIPLICITY OF ACTIONS."

The maintenance of several actions in ejectment by certain parties against several defendants will not be enjoined to avoid a multiplicity of suits, though the grounds of the actions are similar; there being a "multiplicity" of actions, within the legal acceptation of the term, only where the actions are against a single defendant.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24–49, 59–61; Dec. Dig. § 26.*

For other definitions, see Words and Phrases, vol. 5, p. 4618.]

7. INJUNCTION (§ 114*)—PARTIES—PLAINTIFFS—JOINDER.

Where each of several parties owned a distinct piece of land having a distinct chain of title, and neither was concerned, except sentimentally, in the result of actions in ejectment brought against the others, they were improperly joined as plaintiffs in a single action to enjoin the maintenance of the ejectment actions.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 202–220; Dec. Dig. § 114.*]

8. PARTIES (§ 11*)—PLAINTIFFS—SUING FOR ALL INTERESTED.

Nor could the action be maintained by such parties as an action brought by one or more parties for the benefit of others similarly situated.

[Ed. Note.—For other cases, see Parties, Cent. Dig. § 12; Dec. Dig. § 11.*]

9. ACTION (§ 50*)—JOINDER—INTEREST.

Several parties having separate and distinct interests in a fund arising in condemnation proceedings could not join as plaintiffs in a suit affecting such fund, though the source of the fund was common to all.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 511–547; Dec. Dig. § 50.*]

10. INJUNCTION (§ 26*)—RIGHT OF ACTION—MAINTENANCE OF EJECTMENT—MULTIPLICITY OF SUITS.

The maintenance of ejectment against several defendants will not be enjoined merely because the parties will be put to greater trouble and expense in defending the several ejectment actions brought against them than if they were permitted to maintain one suit and have the conflicting claims of title determined therein.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24–49, 54–61; Dec. Dig. § 26.*]

Appeal from Trial Term, Kings County.

Action by Prospect Park & Coney Island Railroad Company and others against James E. Morey and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

George W. Wingate, of New York City, for appellants.

Huntington W. Merchant, of New York City (W. E. Kisselburgh, Jr., on the brief), for respondents.

BURR, J.   Plaintiffs appeal from a final judgment sustaining a demurrer to the complaint.   It is necessary for us to consider but two of the objections therein specified, namely, the failure to state facts sufficient to constitute a cause of action, and the improper union of causes of action.

In examining a complaint consisting of 283 pages of closely printed matter, it is somewhat difficult to extract therefrom the facts which plaintiffs contend constitute a cause of action.   We think that this fairly summarizes them: About April 27, 1876, one of the plaintiffs, the Prospect Park & Coney Island Railroad Company, became the owner of certain lands at Coney Island, on both sides of Surf avenue, the southerly boundary of which was the Atlantic Ocean, and it has continued and now is in the exclusive possession thereof, except as to a portion which has been acquired by the city of New York.   In May, 1898, Catherine A. Balmer, another of plaintiffs, and about March 12, 1904, Dreamland, a third of the plaintiffs named, each became the owner of separate pieces of land similarly situated; the former lying to the east and the latter to the west of the railroad lands.   Each of these plaintiffs has since these respective dates maintained exclusive possession of the lands conveyed to them, subject to the exception above noted.   In February, 1912, the city of New York instituted proceedings to acquire a portion of the lands owned by the Railroad Company, Balmer, and Dreamland, respectively, for a public park, and on March 14, 1912, title to said lands was, pursuant to statute, vested in the city of New York.   The condemnation proceedings are still pending, and the amount of the award to be made to the owners of the land thus acquired has not yet been determined.   In September, 1910, plaintiffs Charles L. Feltman and Alfred Feltman became the owners of another piece of land situated similarly to those above described, and lying to the west of the parcel owned by Dreamland.   No portion of that land has been acquired by the city.   The complaint alleges that they are now, and that they and their immediate predecessors in title for more than 100 years have been, in continued and exclusive possession of the land thus acquired by them.

Although Charles L. Feltman and Alfred Feltman, as administrators of the estate of Charles Feltman, deceased, have also been named as parties plaintiff, there is no suggestion that in their representative capacity they have any interest in said lands nor in the subject-matter of this action.   Each of plaintiffs contends that its and their original sources of title were various patents to the town of Gravesend, the first made in December, 1645, by William Kieft, Governor of the Province of New Netherlands, and others, confirmatory of and supplemental to this, made on August 13, 1668, July 1, 1670, and Sep-

tember 10, 1686. It is further alleged that each of these patents was confirmed by an act of the Colonial Assembly of New York, passed in 1691, and by various Constitutions adopted by the people of this state, subsequently to that date. On February 23, 1912, the defendants James E. Morey, Nina Hayes, and Elizabeth B. Pine brought an action of ejectment against plaintiff Dreamland to recover possession of an undivided two-thirds part of the premises belonging to it, and upon the same date a similar action against the plaintiff Catherine A. Balmer. On March 8, 1912, said defendants began another action, of a similar character, against plaintiffs Charles L. Feltman and Alfred Feltman, both individually and as administrators of the estate of Charles Feltman, deceased. Each of these actions is still pending. No action has as yet been commenced against plaintiff the Railroad Company, but it is alleged that said defendants have threatened to bring such an action, and that they have commenced various other actions, both at law and in equity, against various other persons not named in the complaint, who have acquired property at Coney Island directly from the town of Gravesend or its grantees, in substantially the same manner as these plaintiffs have acquired the property belonging to them.

The complaint further alleges that said defendants have intervened in the proceedings now pending for condemnation by the city of New York of a portion of the lands of the Railroad Company, Dreamland, and Balmer, respectively, for a public park, and have claimed title and to be the owners of said land, and that the effect of this may be that the awards to be made in such proceedings for the value of the land acquired, instead of being paid to them directly as the owners thereof, will be paid into court to the credit of "unknown owners," thereafter to be the subject of further litigation. It is also alleged that defendants' only claim of title is through a deed made by one Thomas Stilwell to Barnt Johnson in December, 1727, and, by various subsequent conveyances and wills referred to in the complaint, that the original deed from Stilwell to Johnson did not purport to convey any of the property belonging to plaintiffs or either of them, and, in addition, that if it did include such lands, the grantor, Stilwell, had no title to the same, and that said actions of ejectment and the claims of defendants to the ownership of said lands are not brought and made in good faith, but for the purpose of casting a cloud upon the title of the various parcels of land owned by plaintiffs in severalty, and to induce them to buy their peace. The relief demanded is:

"That each and every of the above deeds upon which the said defendants assert their claim of title may be declared null and void and directed to be canceled. (2) That it may be adjudicated that the defendants have no title to the premises owned by the plaintiffs as hereinabove mentioned, or to those of any and all other persons who are similarly situated. (3) That the plaintiffs and each and every thereof are the owners of the respective premises belonging to them as hereinabove stated. (4) That the defendants and each and every thereof may be enjoined and restrained from asserting any title to the premises belonging to the said plaintiffs respectively or to those persons similarly situated who own property on Coney Island, and from intervening or taking any proceedings under claim of being such owners in any manner whatsoever."

[1] It is not contended that this action can be sustained as a statutory action to determine the claims to real property. Code of Civil Procedure, §§ 1638, 1639. Not only is the prayer for relief inappropriate, but, as to a considerable portion of the property which forms the subject-matter thereof, neither of plaintiffs is now in possession of the same or claiming an estate therein, but the legal title is now in the city of New York or in other persons not named, and as to the lands now owned by the city of New York plaintiffs and defendants are only interested in the ownership of the proceeds of the sale thereof.

[2] Neither may the action be maintained as an equitable action in the nature of a bill of peace. If the allegation of the complaint in the form of a conclusion of fact is correct, that the Stilwell deed did not include within its words of description the locus in quo, defendants' claim is invalid upon its face. From a copy of the deed set forth at length in the complaint, if such is not the case it will at least require proof of extrinsic facts to establish that it did include the same. In such a case a court of equity will not interfere, but will leave the party in possession to his defense. Scott v. Onderdonk, 14 N. Y. 9, 67 Am. Dec. 106; Lehman v. Roberts, 86 N. Y. 232.

[3] Either the primary deed in the chain of defendants' title did or did not include the premises in question. If it did not, then assuredly there is no equitable reason for setting such a deed aside. If it did, then either the grantor did or did not have title to the land which he purported to convey. If he did, equity may not set such deed aside, and, if he did not, there is no reason for so doing, since included therein is other land as to which, so far as this complaint discloses, there may be no dispute.

[4, 5] But appellants assert in their complaint that defendants have conspired to do injury to the plaintiffs, and that the suits brought by them are fraudulent in character, and that therefore the prosecution of such actions should be enjoined. But no action for a conspiracy lies when two or more persons conspire to do a lawful act in a lawful manner and cause damage thereby, even though they may have acted with a malicious motive. Cohen v. Nathaniel Fisher & Co., 135 App. Div. 238, 120 N. Y. Supp. 546. Defendants claim and assert in their pleadings in the various ejectment suits that they are the owners of an undivided interest in the premises in question, and in one of the most lawful methods possible, namely, by invoking the judgment of a court of law, they seek to have the validity of such claim determined. If, under such circumstances, a defendant in an action of this character, by attacking the good faith of a plaintiff therein, may bring the trial of the issue of the validity of the title into a court of equity, it is difficult to see how the constitutional provision that "trial by jury in all cases in which it has been heretofore used shall remain inviolate forever" (Constitution, art. 1, § 2) becomes of any value whatever. Neither is there any allegation of fact, aside from the conclusions of plaintiffs, that defendants' conduct is fraudulent in character that would justify the interference of a court of equity. Defendants may be entirely mistaken as to the validity of the claims

which they make to the ownership of this land, but it cannot be said that they.are not honestly mistaken in respect to the same.

[6] Nor has equity jurisdiction in this case upon the ground that it is necessary to avoid a multiplicity of actions. So far as these plaintiffs are concerned, each of them is subject to one action and one only, namely, that brought to determine the validity of the title to the various pieces of land held by them in severalty. There is a distinction between many actions against many different defendants, although the ground of each of these actions may be similar in character, and many actions against a single defendant growing out of the same alleged grievance. In the latter case there may be "multiplicity" within the legal acceptation of that term, but not in the former.

[7] Neither do we think that plaintiffs here are so united in interest that they may be joined as parties in a single action. Code Civil Procedure, §§ 446, 448, 484; Howell v. City of Buffalo, 2 Abb. Dec. 412; Bouton v. City of Brooklyn, 15 Barb. 375. Each of the parties owns a distinct piece of land. Although all trace their title from the same common source, it is .by entirely separate and distinct chains. One party may have a good title and the other a defective one. In the ejectment suits one may succeed and another fail. Except sentimentally, neither is concerned in the result of the action against the other. In Howell v. City of Buffalo, supra, the court said:

"The subject-matter in this case is land, and every plaintiff must be interested in the same piece of land. * * * There is an improper joinder of plaintiffs who claim no common interest, but assert distinct and several claims against one and the same defendant. This is not allowable."

[8] Neither may it be treated as an action brought by one or more plaintiffs for the benefit of others similarly situated. In Bouton v. City of Brooklyn, supra, the court said:

"The lands supposed to be affected by the cloud are held in severalty, and the nonjoinder of the others could not be set up as a reason why the action at the suit of one should not proceed. The reason, therefore, why the law allows bills to be filed at the suit of a few, in behalf of themselves and others, does not apply to such a case. Seen in this aspect, the action is for the benefit of the plaintiff alone, and is to be disposed of in the same manner as if the charges and allusions to others were stricken from the complaint."

[9] Neither can it be said that plaintiffs have a common interest in the fund which will arise in the condemnation proceedings above referred to after the commissioners shall have determined the amount to be awarded for the lands taken, and their report shall have been confirmed. Although the source of the fund may be common to all, the interest therein of each of plaintiffs whose land is taken will be separate and distinct. But it would be sufficient to destroy any contention that the action might be maintained upon such a ground that no part of the land owned by plaintiffs Feltman is taken in such proceedings, and that they will never have any interest in said fund or any portion thereof.

[10] It may be that plaintiffs severally will be put to greater trouble and expense in defending the various actions of ejectment brought against them than if they were permitted to unite in an action of this

140 N.Y.S.—25

nature and have the conflicting claims of title determined therein. But that alone is not sufficient to entitle them to the relief asked for. The judgment should be affirmed, with costs. All concur.