JACOB L. GUTTAG, Appellant, *v.* HYMAN SHATZKIN, Respondent.

First Department, December 24, 1920.

Landlord and tenant — constitutionality of Laws of 1920, chapter 947, suspending remedy by ejectment — encroachment on constitutionally conferred jurisdictional powers of Supreme Court — taking of property without due process of law.

Chapter 947 of the Laws of 1920, which repealed section 1531a of the Code of Civil Procedure and added a new section with the same number and which in effect provides that owing to a public emergency no action shall be maintained for the recovery of the possession of real property occupied for dwelling purposes in a city of 1,000,000 or more inhabitants or in a city in a county adjoining, except an action on the ground that the person is holding over and is objectionable, in which case the landlord shall prove that he is objectionable, or an action where the individual owners seek possession for their immediate and personal occupancy as a dwelling, or where possession is sought to demolish the building and construct a new one for which plans have been filed and approved, and that it shall remain in effect till November 1, 1922, is unconstitutional as an encroachment on the jurisdiction of the Supreme Court in violation of article 6, section 1, of the State Constitution conferring on that court general jurisdiction in law and equity, since the right to recover real property by an action of

---

* For dissenting opinion see *ante,* p. 507.— [REP.

ejectment was a common-law right and full jurisdiction over such actions is vested in the Supreme Court.

Chapters 944 and 945 of the Laws of 1920 having suspended the remedy by summary proceedings except to remove a tenant for the non-payment of a reasonable rental, the statute in question is unconstitutional also on the ground that it was the final enactment of the Legislature culminating in the removal of every remedy, excepting in the particular instances stated, of an owner for the recovery of the possession of real property occupied by tenants whose terms had expired and who were under contract obligations expressed in the leases or implied by law to vacate the premises and surrender possession thereof to the owner or landlord. The right to an appropriate remedy by an appeal to the courts for the performance of a contract obligation is a part of every lawful contract and is read into it, and the destruction or substantial destruction by such a suspension of that remedy by a legislative act constitutes the taking of property without due process of law.

MERRELL, J., dissents.

APPEAL by the plaintiff, Jacob L. Guttag, from an order of the Supreme Court, made at the Bronx Special Term and entered in the office of the clerk of the county of Bronx on the 19th day of October, 1920, denying plaintiff's motion for judgment on the pleadings, consisting of the complaint and the demurrer.

*Francis M. Scott* [*I. Maurice Wormser* and *Julius H. Zieser* with him on the brief]; *Bernard S. Deutsch,* attorney, for the appellant.

*George L. Ingraham* and *John M. Stoddard,* for Real Estate Board of New York, as *amici curiœ.*

*Gilbert Ray Hawes,* for the respondent.

*William D. Guthrie* and *Julius Henry Cohen, Special Deputy Attorneys-General,* for the Attorney-General.

*Elmer G. Sammis* and *Bernard Hershkopf* for the Joint Legislative Committee on Housing, as *amici curiœ.*

*Joseph A. Seidman,* as *amicus curiœ.*

*Leonard Klaber,* as *amicus curiœ.*

LAUGHLIN, J.:

This appeal involves the validity of chapter 947 of the Laws of 1920, which was enacted on September twenty-seventh at

the extraordinary session of the Legislature duly convened
by the Governor on the 20th day of September, 1920,
and to which he presented the message set forth in full
in the statement of facts in *Levy Leasing Co., Inc.,* v. *Siegel*
(194 App. Div. 482), argued and decided herewith. That
chapter repealed section 1531a of the Code of Civil Pro-
cedure, which was added by chapter 135 of the Laws of 1920,
and added a new section (1531a) declaring that owing to a
public emergency no action should be maintained for the recov-
ery of the possession.of real property in a city of.1,000,000 or
more inhabitants or in a city in a county adjoining, occupied
for dwelling purposes, except an action on the ground that the
person is holding over and is objectionable, in which case the
landlord shall prove that he is objectionable, or an action
where the individual owners seek possession for their imme-
diate and personal occupancy as a dwelling or where
possession is sought to demolish the building and construct
a new one for which plans have been filed and approved;
and it was provided that the section should remain in
force until November 1, 1922. Section 1531a, as originally
enacted and added by said chapter 135, provided that in an
action to recover the possession of real property on the ground
that the person in possession is holding over after the expira-
tion of his term or after a default in the payment of rent, the
answer might set up as a defense or counterclaim any state of
facts which might be pleaded as a defense or counterclaim
under the provisions of title 2 of chapter 17 of the Code of
Civil Procedure relating to summary proceedings. Chapter
137, enacted in April, 1920, related to summary proceedings in
cities of the first class and in cities in counties adjoining, where
the recovery of premises occupied for dwelling purposes, other
than hotels, lodging or rooming houses, was sought on the
ground that the occupant was holding over after the expiration
of his term, and was declared to be emergency legislation and
entitled to be liberally construed. Section 3 authorized a stay
for not more than one year of a dispossess warrant and of
execution for costs, on the application of the tenant showing
that he was unable to secure suitable similar premises in the
neighborhood after due and reasonable effort, and that the
application was made in good faith and that he was willing to

abide by and comply with the terms prescribed for the stay, and on other facts warranting a stay. The stay could only be granted by the court on conditions prescribed by the court, requiring among other things that the tenant deposit the entire rent for the period of the stay, or in installments, at the rate for the prior month, plus such additional amount as may be determined by the court to be reasonable, and all accrued rent, and provision was made for the landlord receiving the money so deposited. That chapter was amended by chapter 948 by excluding New York city therefrom and, in effect, confining it to the cities of Buffalo and Rochester.

On April 1, 1920, when the Legislature enacted the original emergency landlord and tenant legislation, it enacted chapter 131, adding section 2040 to the Penal Law, making the lessor of any building, or part thereof, who was required by the expressed or implied terms of any contract or lease to furnish water, heat, light, power, elevator service or telephone service to any occupant thereof, who willfully or intentionally fails so to do, at any time when the same was necessary to the proper or customary use of the building or any part thereof, or any lessor who willfully and intentionally interferes with the quiet enjoyment of the leased premises by the occupant, guilty of a misdemeanor. That section was further amended by chapter 951 by extending its application to a representative of the landlord and by further extending its provisions.

It thus plainly appears that the legislation to which reference has been made took away for the period of upwards of two years every remedy of any name or nature which a landlord had for obtaining possession of his premises where possession was not desired for the exceptional purposes specified in chapter 947, and left the landlord subject to prosecution for the violations of the provisions of section 2040 of the Penal Law if he did not continue to perform the obligations thereby imposed, unless it should be held that it was not intended to continue the contract or lease under which the occupant held, which is a point not presented for decision. The Legislature did not in express terms assume to make a new contract between the landlord and tenants. If chapter 947 be valid, then at most the only remedy left to the landlord for the period of two years, one month and four days was to attempt to elect to hold

the tenant under the former lease, on the theory that by his holding over it had become renewed from month to month or year to year, as the case might be, or to regard the tenant as a trespasser who, however, could not be removed, and to sue him for use and occupation. If he pursued the latter remedy he could at most only obtain a money judgment enforcible by a property execution, which in many cases would be of little value. If he elected to regard the lease as renewed and to demand rent, he might have a summary proceeding under chapter 945 (amdg. Code Civ. Proc. § 2231, subd. 2a, as added by Laws of 1920, chap. 139) if the rent demanded was not greater than the amount for which the tenant was liable for the month preceding the default, or he might sue for rent only and recover a reasonable rental, and on the failure of the tenant to pay, obtain a warrant for his removal under chapter 944 (amdg. Laws of 1920, chap. 136). It is quite plain, however, that the Legislature has attempted to give the tenant the privilege of remaining in possession during this period without expressly imposing any obligation upon him with respect to the payment of rent or fixing the period for which he shall be liable for rent; and while tying the hands of the landlord, has left the tenant at liberty to remove at will and without any notice to afford the landlord an opportunity of letting the premises to others. There has been here no attempt to take the property of the landlord under the power of eminent domain and afford him an adequate remedy for the value of the use thereof. It is unnecessary, therefore, to consider whether it would be competent for the Legislature by appropriate legislation providing for adequate compensation thus to take the property of one for the use of another. The statute transfers without making any provision for compensation the use of the property of the landlords to the tenants. Some very radical arguments have been made in favor of this legislation; but no counsel has contended that it would be competent for the Legislature, for this or any other purpose, without the exercise of the power of eminent domain and making adequate provision for just compensation to the landlords, to compel the owners of such property against their will to admit thereto people desiring living apartments who

might be unable to find them elsewhere. There is in my opinion no more justification for this legislation under the Constitution than there would be for requiring the landlords to open up vacant apartments for the use of any one without housing accommodations. The fundamental objection to the legislation, even if it were otherwise authorized, is that the Legislature has here assumed to determine not merely facts existing in the past and at the time of the enactment of the statute, which concededly was within its province, but the facts as they may exist from day to day throughout the period during which the owners are deprived of the possession of their property, and has made inconsistent determinations with respect thereto. In other words, I think that the courts cannot well question that an emergency existed authorizing the exercise of the police power by the Legislature, but I am of the opinion that it has not adopted means appropriate to the end, having due regard to the rights of both landlords and tenants, but has arbitrarily given the tenants virtually the free use of the property of the landlord for more than two years unless the landlord submits to the coercion and elects to proceed for rent at the former rate or for a reasonable rental and in either of which events, if the tenant does not pay, the public morals, health and safety are deemed not to be endangered by his removal without regard to whether or not he and his family may find other shelter. In authorizing the removals in those instances, the effect of any legislative determination that it would be impossible for evicted tenants to find other accommodations, to be found in this or the other statutes enacted at the same time, is destroyed, for surely it was not within the province of the Legislature to peer into the future and decide that if a tenant should fail to pay rent at the rate for which he was liable during the preceding month or a reasonable rental determined by the court or jury, the public welfare would not be endangered or affected by his eviction, but that in all other cases the public morals, health and safety would be so endangered by the eviction of a tenant wrongfully holding over, who, in the eye of the law, is a trespasser, that it was necessary for the public welfare that he should not be evicted even though the owner desired to discontinue leasing his property and desired possession thereof

to use it for any lawful purpose or not to use it at all. As to all other tenants, the Legislature has decreed that the landlord must permit them to continue in against his will and must continue to furnish them the accommodations provided for in section 2040 of the Penal Law at the risk of criminal prosecution therefor; and the only remedy left to him to obtain possession of his property, with the exceptions stated in the statute, depending on the use for which he desires possession, to which reference has been made, is in the two instances where he elects · to take rent at the rate charged for the prior month and institute a summary proceeding for non-payment thereof or to bring an action for the rent, and in both instances the recovery would be limited to a reasonable rental, and if that were paid, the trespasser is permitted to remain in possession. The Legislature has assumed to decide in advance that at no time during the period during which it has attempted to suspend, excepting in the instances herein stated, every remedy by which a landlord may regain possession of his property, may a tenant be removed without endangering the public health, safety and order; and that determination was evidently made on the theory that at no such time will there be available accommodations for the housing of evicted tenants save in the particular instances of tenants evicted for not paying at the former rate or a reasonable rate and that it is, therefore, necessary thus to suspend all remedies in other cases, lest otherwise the public health, morals, safety and order may be endangered by tenants and their effects being thrown into the public streets with no shelter available. I am of the opinion that it was not competent for the Legislature so to decide. The Supreme Court, in which this action was brought, is vested by the Constitution with general jurisdiction in law and equity. (Art. 6, § 1.) The right to recover real property by an action in ejectment was a common-law right (*Bradt* v. *Church,* 110 N. Y. 542; *Bryan* v. *McGurk,* 200 id. 332; *Lewis* v. *Cocks,* 23 Wall. [U. S.] 466; *Prospect Park & Coney Island R. R. Co.* v. *Morey,* 155 App. Div. 347), and full jurisdiction over such actions is vested in the Supreme Court. By this statute the Legislature has attempted to suspend the exercise of that jurisdiction for upwards of two years and instead of leaving the court free to entertain the action and decide the issues presented for decision

and determine whether its process for delivering possession of the property to the owner shall be forthwith issued or withheld for a period, it has attempted to prohibit the court even from entertaining the action and deciding the issues. Surely this drastic legislation cannot be sustained on the theory that it was essential to the health of tenants and their families to give them this assurance that their possession as trespassers could not be disturbed and that they need not pay for the use of the property unless they had property subject to execution, and need pay no rent unless the landlords elected to ratify the trespass and then only after a court should decide what would be a reasonable rental. It is settled law that the court has full control over writs of possession and may stay or enjoin the issuance thereof whenever the circumstances require that to be done, and that one of the grounds on which this jurisdiction is exercised is that an " oppressive use " of the writ is threatened or is being made. (*Jackson* v. *Stiles,* 3 Wend. 429; *Knox* v. *McDonald,* 25 Hun, 268; *Granger* v. *Craig,* 85 N. Y. 619; *Cornell* v. *Dakin,* 38 id. 253; *Chadwick* v. *Spargur,* 1 Civ. Proc. Rep. 422; *Rumsey* v. *Otis,* 133 Mo. 85; *Hay* v. *Valley Pike Co.,* 38 Penn. Sup. Ct. 145; 15 Cyc. 189; 17 id. 1135; Newell Ejectment, 816; Warvelle Ejectment, 520; Freeman Executions, § 37.) Not only has the court authority to stay the execution of its final judgments and writs, but where the process is abused, as by evicting a person who is ill, it affords a remedy by way of damages. (*Preiser* v. *Wielandt,* 48 App. Div. 569; *Bradshaw* v. *Frazier,* [Ia.] 85 N. W. Rep. 752. See, also, *Herter* v. *Mullen,* 159 N. Y. 28.) I do not question the power of the Legislature to legislate on this subject as by forbidding the eviction of a person who is ill or who is suffering from a contagious disease by which the public health may be endangered, and to alter and regulate the jurisdiction and proceedings in law and in equity conferred upon it by article 6, section 3, of the Constitution, or to provide that during such emergency writs of possession should not issue where it is shown that the execution thereof would endanger public health, morals, safety or order, owing to the fact that there were no available housing accommodations for the persons evicted. That would be merely a regulation of the power already vested in and possessed by the court, which, however,

it could and would exercise without any such attempted regulation. Instead, however, of so providing the Legislature has attempted to withdraw from the Supreme Court, which is a co-ordinate branch of the State government deriving its jurisdiction and authority not from the Legislature but from the Constitution, all jurisdiction in the premises for the period specified. I, am of the opinion that this constitutes a clear encroachment upon the jurisdiction of the court, in violation of article 6, section 1, of the State Constitution. (*People ex rel. Mayor* v. *Nichols*, 79 N. Y. 582; *Alexander* v. *Bennett*, 60 id. 204; *De Hart* v. *Hatch*, 3 Hun, 375; *Riglander* v. *Star Co.*, 98 App. Div. 101; affd., 181 N. Y. 531; *Mussen* v. *Ausable Granite Works*, 63 Hun, 369; *Gilman* v. *Tucker*, 128 N. Y. 190.)

I regard this statute also as plainly unconstitutional on the ground that it was the final enactment of the Legislature culminating in the removal of every remedy, excepting in the particular instances stated, of an owner for the recovery of the possession of real property occupied for dwelling purposes by tenants whose terms had expired and who were under contract obligations expressed in the leases or implied by law to vacate the premises and surrender possession thereof to the owner or their landlord. The power of the Legislature to take away one remedy and substitute another is not questioned; but that was not done, and the right to an appropriate remedy by an appeal to the courts for the performance of a contract obligation is a part of every lawful contract and is read into it, and the destruction or substantial destruction by such a suspension of that remedy by a legislative act constitutes the taking of property without due process of law. (*Gilman* v. *Tucker*, 128. N. Y. 190; *Fletcher* v. *Peck*, 6 Cranch, 87; *Gantly* v. *Ewing*, 3 How. [U. S.] 707; *Planters' Bank* v. *Sharp*, 6 id. 301; *Seibert* v. *Lewis*, 122 U. S. 284; *McGahey* v. *Virginia*, 135 id. 662; *Ex parte Milligan*, 4 Wall. 2; *Kring* v. *Missouri*, 107 U. S. 221; *Green* v. *Biddle*, 8 Wheat. [U. S.] 1; reargument, Id. 75–84; *Bronson* v. *Kinzie*, 42 U. S. [1 How.] 311; *Edwards* v. *Kearzey*, 96 id. 595; *Effinger* v. *Kenney*, 115 id. 566; *Walker* v. *Whitehead*, 16 Wall. [U. S.] 314; *McCracken* v. *Hayward*, 43 U. S. [2 How.] 608; Cooley Const. Lim. [7th ed.] 411; U. S. Const. 14th Amendt. § 1; State Const. art. 1, § 6.)

In *Gilman* v. *Tucker* (*supra*) the court held: " The Legis-
lature has no power to deny, for any cause, to a party who has
been illegally deprived of his property, access to the con-
stitutional courts of the State for relief; the denial of a remedy
for the wrong inflicted deprives him of his property as effec-
tually as if it had been taken from him by direct legislative
enactment."

In *Walker* v. *Whitehead* (*supra*) the court said: " The laws
which exist at the time and place of the making of a contract,
and where it is to be performed, enter into and form a part of it.
This embraces alike those which affect its validity, construction,
discharge and enforcement.   Nothing is more material to the
obligation of a contract than the means of its enforcement.
The ideas of validity and remedy are inseparable, and both
are parts of the obligation which is guaranteed by the Con-
stitution against impairment."

' Cooley (*supra*) says: " Where a statute does not leave a
party a substantial remedy according to the course of justice as
it existed at the time the contract was made, but shows upon
its face an intention to clog, hamper or embarrass the pro-
ceeding to enforce the remedy, so as to destroy it entirely, and
thus impair the contract so far as it is in the power of the
Legislature to do it, such statute cannot be regarded as a
mere regulation of the remedy, but is void, because a sub-
stantial denial of right."

I have not overlooked the decisions of *Edmonson* v. *Fer-
guson* (11 Mo. 344); *Breitenbach* v. *Bush* (44 Penn. St. 313) and
*Hoffman* v. *Charlestown Five Cents Savings Bank* (231 Mass.
324), in the first two of which it was held competent for the
State Legislature to suspend during the Mexican War and the
War of the Rebellion actions and proceedings against volun-
teers while absent from the State in the military or naval
service of their State or country, and in the last of which, the
Soldiers' and Sailors' Civil Relief Act (40 U. S. Stat. at Large,
440, chap. 20; Id. 444, § 302), authorizing and requiring
the courts in any proceeding commenced against one who is
in the military service to enforce an obligation secured by
a mortgage or other security in the nature of a mortgage
upon real or personal property, where he owns the legal or
equitable title, to stay proceedings therein on their own motion

or on his application, unless it shall appear that his inability to comply with the terms of the obligation is not materially affected by reason of his military service, and forbidding in such cases a strict foreclosure under power of sale without an order of the court, was sustained as a war measure within the power of Congress and, therefore, the supreme law of the land. It is manifest that those statutes, which were general and not, as here, designed to suspend the right of an owner to recover possession of his own property, were enacted on the theory of affording the defendants a reasonable opportunity to defend the litigation. In my opinion they are not materially in point here, for the attempted suspension of the remedy by the statute in question was not to enable the interposition of any available defense, but on the assumption that there was and could be no defense and that the emergency warranted the Legislature in giving the tenants the right to remain in possession in violation of their contract obligations, not merely until they could obtain suitable accommodations, but arbitrarily and without regard to the facts as they might develop in the future for the entire period specified, and without attempting to make any adequate provision by which the landlord, who, it was evidently assumed, would be obligated to continue service to the tenants as provided in section 2040 of the Penal Law, would receive compensation for the use of his premises.

There are precedents for the suspension, for a limited specified time during a financial depression or during war, by general laws, of the enforcement of contract obligations, but such suspension must be general and may not be made to fit individual cases or for particular localities. (Cooley Const. Lim. [7th ed.] 414, 558; *Chadwick* v. *Moore*, 8 Watts & Serg. [Penn.] Rep. 49; *Stevens* v. *Andrews*, 31 Mo. 205; *Bunn, Raigul & Co.* v. *Gorgas*, 41 Penn. St. 441; *Hasbrouck* v. *Shipman*, 16 Wis. 296; *Bull* v. *Conroe*, 13 id. 233; *Holden* v. *James*, 11 Mass. 396; *Bender* v. *Crawford*, 33 Tex. 745. See, also, *Gilman* v. *Tucker*, 128 N. Y. 190.) That doctrine is founded upon the requirements of the public interests and welfare that the rights of creditors *to take the property of their debtors* on execution shall be suspended temporarily; but no decision has been cited, and I have found none, sustaining on any theory

a statute, such as this, transferring the use of the *property of one to another* who has no right thereto, and legalizing for any period the latter's possession thereof contrary to the express terms of the contract between the parties; and in *Chadwick* v. *Moore* (*supra*) it was stated by the court, in discussing the authority of the State to suspend executions temporarily, that if the Legislature attempted to suspend the right of a mortgagee to recover possession by an action of ejectment based on his legal title, it would doubtless be unconstitutional in that particular aspect, and that a statute suspending a remedy must operate alike on all creditors and debtors. I think there is a plain distinction between attempting to suspend generally for a limited time actions or remedies for the enforcement of contract rights by money judgments and executions for the sale of the property of the debtor and an attempt to suspend all remedies of the owners of a particular class of property for recovering the possession thereof according to the express terms of the contract under which the possession was surrendered by the owner or landlord.

I am, therefore, of opinion that the statute is unconstitutional and void on the two grounds stated.

Since this opinion was written we have been furnished with a copy of the opinion of the United States District Court for the Southern District of New York, three judges sitting, in *Brown Holding Co.* v. *Feldman* (269 Fed. Rep. 306), recently decided, sustaining this statute; but with all due deference to the learned opinion in that case, we must follow our own views.

It follows that the order should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs, with leave to the defendant to withdraw the demurrer and to answer on payment of the costs of the appeal and the motion.

CLARKE, P. J., and DOWLING, J., concur; GREENBAUM, J., concurs in result; MERRELL, J., dissents.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, with leave to defendant to withdraw demurrer and to answer on payment of said costs.